UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

VANESSA YORK, MARSHAL                                       Plaintiffs
EMMERLING, AND MATTHEW MOSS,
each individually and on behalf of others
similarly situated,

v.                                                Civil Action No. 3:19-cv-092

VELOX EXPRESS, INC.                                        Defendant

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Vanessa York, Marshal Emmerling, and Matthew Moss ("Plaintiffs") seek relief

against Velox Express, Inc. ("Velox") for alleged wage violations under Section 16(b) of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  [DE 1].  Plaintiffs move for conditional

certification of an FLSA collective action, disclosure of potential opt-in plaintiffs' contact

information, and court-approved notice to the potential plaintiffs under 29 U.S.C. § 216(b)

("Motion").  [DE 29].  Velox opposed the Motion, [DE 31], and Plaintiffs replied.  [DE 32].  The

matter is ripe.  For the reasons below, the Motion [DE 29] is **GRANTED in part**.

## I.       BACKGROUND

"Velox is a logistics company."  [DE 31 at 215].  Plaintiffs all performed courier and

delivery services for Velox in the Arkansas region.  [DE 1 at 4].  Plaintiffs allege that Velox "has

a uniform policy and practice of classifying its delivery drivers, also known as couriers . . . , as

independent contractors to avoid the minimum wage and overtime requirements of the" FLSA.

[DE 29 at 171].  Plaintiffs "assert claims under the [FLSA] alleging that Velox did not pay them

statutory minimum wage and overtime."  [DE 31 at 213].  Plaintiffs now move to "conditionally

certify a collective action pursuant to Section 216(b) of the FLSA to allow other similarly situated

1

Drivers to be notified of their right to join this case." [DE 29 at 171]. Plaintiffs seek Court approval of plans for the opt-in process and attach proposed notice and consent forms to the Motion. [*Id.*; *see also* DE 29-1, 29-2, 29-3].

## II.   STANDARD

"Congress passed the FLSA with broad remedial intent" to protect all "covered workers from substandard wages and oppressive working hours." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)); 29 U.S.C. § 202(a). Under the FLSA, non-exempt, hourly employees who work more than forty hours weekly have a right to receive overtime compensation. 29 U.S.C. § 207(a). If an employer violates the FLSA by not paying overtime, an employee may bring a collective action individually and on behalf of all those similarly situated, who may then opt-in by giving written consent. 29 U.S.C. § 216(b). "Courts interpreting the FLSA must consider Congress's remedial purpose." *Keller*, 781 F.3d at 806.

"The certification process in a FLSA collective action typically proceeds in two phases." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015). "The first phase takes place at the beginning of discovery," *Hathaway v. Shawn Jones Masonry*, No. 5:11-cv-121, 2012 WL 1252569, at *2 (W.D. Ky. Apr. 13, 2012), and the plaintiff must only "show that his position is similar, not identical, to the positions held by the putative class member." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.C. Ohio 2002)) (internal quotation marks omitted). Plaintiffs "are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a

violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, showing a unified policy of violations is not required for conditional certification. *Id.* at 584.

In the first phase, the court applies a "fairly lenient standard," which "typically results in conditional certification of the class." *Comer*, 454 F.3d at 547 (6th Cir. 2006) (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). To meet this standard, plaintiffs must make "a modest factual showing" of "a colorable basis for their claim that a class of similarly situated plaintiffs exist." *See Stine v. Fedex Ground Package Sys., Inc.*, No. CV 18-114-DLB-CJS, 2019 WL 2518127, at *2 (E.D. Ky. June 18, 2019) (quoting *Olivio v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)) (internal quotation marks and formatting omitted). In this phase, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (quoting *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015)). "Once a court determines that the potential opt-in plaintiffs are similarly situated to the named plaintiffs, notice is sent, opt-in forms are filed and discovery takes place." *Atkinson*, 2015 WL 853234 at *3 (internal quotation marks omitted).

In the second phase, "the defendant may file a motion to decertify the class" and "the court revisits, with greater scrutiny, the question of whether the class members are, in fact, similarly situated." *Id.*

## III.    DISCUSSION

### A.  Conditional Certification

Plaintiffs request conditional certification.    In support, Plaintiff York submitted a declaration alleging that: (1) it was Velox's "policy to pay Drivers a fixed rate for routes driven or items delivered, rather than according to the actual amount of time worked by Drivers"; (2) sometimes her "duties for [Velox] required [her] to work more than forty (40) hours per week"; (3) she "regularly worked between forty (40) and forty-five (45) hours per week for" Velox; (4) Velox "never paid [her] an overtime premium for hours worked over forty per week, and . . . never gave [her] the option of being paid overtime"; (5) "[o]ther Drivers also worked more than forty (40) hours per week"; and (6) she "know[s] of no other Drivers who were paid an overtime premium, and [Velox] never told [her] that [she] was being treated any differently than other Drivers." [DE 29-7 at 204-05]. Plaintiffs assert that the Court should conditionally certify because their causes of action are "unified by common theories of defendants' statutory violations." *O'Brien*, 575 F.3d at 585.  Velox argues that Plaintiffs have failed to meet "their burden of showing that members of the putative class are 'similarly situated' to them[.]" [DE 31 at 213].

#### 1.  *Common Plan or Policy*

Under *O'Brien*, Plaintiffs need not present evidence of a corporate decision to ignore published policies.  Rather, Plaintiffs must set forth claims that are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  575 F.3d at 585.  Plaintiffs have done so by alleging that Velox: (1) does not pay Drivers any overtime premium, even though "Drivers sometimes work more than forty (40) hours per week"; (2) "requires its Drivers to use their own vehicles and pay their own vehicle-related expenses" which brings "their net pay to below the minimum wage"; and (3) "requires its Drivers

4

to enter into standardized agreements with [Velox] establishing the parameters of Drivers' relationship with [Velox] and asserting [Velox]'s treatment of Drivers as independent contractors." [DE 29 at 177-78].

Velox argues that Plaintiffs have failed to demonstrate that Plaintiffs are similarly situated to potential opt-in plaintiffs for two reasons. [1] [DE 31 at 214]. First, Velox argues that "Plaintiffs base their conditional certification request on a single Declaration consisting largely of hearsay and conclusory allegations related to unidentified 'other drivers' at a single Velox location in Arkansas" and that such a "Declaration is insufficient to meet Plaintiffs' burden of establishing that the putative class members are similarly situated for purposes of conditional certification." [*Id.* at 214]. But "[m]any courts" in the Sixth Circuit "have held that employee statements regarding their employer's policies and practices and hours worked by other employees were admissible evidence based on the employee's personal knowledge" and could support conditional class certification. *Myers*, 201 F. Supp. 3d at 894-96 (finding that even though plaintiffs' affidavits were "not detailed," they supported conditional certification because "it is reasonable to infer that in the course of their daily work Plaintiffs would have personal knowledge about whether other employees clocked in and clocked out for lunch breaks or were regularly unable to take a lunch break"); *see Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009) (finding that where affiants stated that they "got to know several other" employees working in the same capacity, it was reasonable to infer that the affiants would have talked to their coworkers about their pay and hours worked and thus had personal knowledge on the subject). Thus, Plaintiff York's declaration is sufficient to support conditional certification.

---

[1] Velox also puts forth a third reason, that "the temporal scope of Plaintiffs' proposed collective group is overbroad and includes persons whose claims would be time-barred." [DE 31 at 214]. This argument, however, will be considered later as it relates to the applicable statute of limitations. *Infra* Section III.B.1.

2. *Arbitration Agreements*

Second, Velox argues that "a significant number and percentage of the members of the putative class have expressly agreed with Velox to individually arbitrate any FLSA or similar state law claims and have expressly waived their right to participate in any class or collective proceeding like this one." [DE 21 at 214]. Velox cites "two federal circuit courts and a federal district court in the Sixth Circuit [that] have recently held that parties to such arbitration agreements should not be included in a class to receive notice of a FLSA collective action case and opt-in rights." [*Id.*] (citing *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JPMorgan Chase & Company*, 916 F.3d 494, 501 (5th Cir. 2019); *Graham v. Word Enterprises Perry, LLC*, 18-CV-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019)). Plaintiffs argue that "the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage." [DE 32 at 255] (quoting *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 U.S. Dist. LEXIS 161623 (S.D. Ohio, Sep. 23, 2019)) (internal quotations omitted).

> The Sixth Circuit has held that the FLSA
>
> gives employees the *option* to bring their claims together. It does not require employees to vindicate their rights in a collective action, and it does not say that agreements requiring one-on-one arbitration become a nullity if an employee decides that he wants to sue collectively after signing one. Accordingly, we can give effect to both [the Federal Arbitration Act and the FLSA]: employees who do not sign individual arbitration agreements are free to sue collectively, *and those who do sign individual arbitration agreements are not.*

*Gaffers v. Kelly Servs.*, 900 F.3d 293, 296 (6th Cir. 2018) (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 at 1624 (2018)) (emphasis added). That said, the Sixth Circuit has not expressly determined whether the existence of an arbitration agreement is a consideration for the conditional certification phase or for the more critical decertification phase.

The Fifth and Seventh Circuits have held that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049-50 (7th Cir. 2020) ("[A] court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action."); *see also Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377 (5th Cir. 2016) ("To hold otherwise would present a justiciability issue: a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore barred from bringing it in court in the first place."). Under both the Fifth and Seventh Circuits' approaches, "the court must give the defendant an opportunity to make th[e] showing" that certain individuals have "entered mutual arbitration agreements waiving their right to join the action." *Bigger*, 947 F.3d at 1050; *JPMorgan*, 916 F.3d at 503 ("The court should permit submission of additional evidence, carefully limited to the disputed facts, at the conditional-certification stage.").

Plaintiffs cite *Clark v. Pizza Baker, Inc.*, where the District Court for the Southern District of Ohio held that "the presence of an arbitration agreement is considered premature even at the conditional certification stage[.]" 2019 U.S. Dist. LEXIS 161623, *21 (S.D. Ohio Sep. 23, 2019). *Clark* adopts the district court's rationale from *Bigger v. Facebook*, 375 F. Supp. 3d 1007, 1022-23 (N.D. Ill. 2019), which was later vacated by the Seventh Circuit. 947 F.3d at 1056. Further, the *Clark* opinion acknowledges that the district court must determine the existence of an arbitration agreement between a *named* plaintiff and the defendant "prior to ruling on the issue of conditional certification[;]" but holds that "the presence of an arbitration agreement between defendants and *potential* plaintiffs, who have yet to opt-in to the suit" is an issue better reserved

7

for the more individualized decertification stage.  2019 U.S. Dist. LEXIS 161623 at *19-20 (emphasis added).  Under either the Fifth and Seventh Circuits' approach or the *Clark* approach, the district court must consider the existence of valid arbitration agreements at some point in a collective action.  The only dispute is whether such a consideration is appropriate at the conditional certification phase or should be reserved for the decertification phase when the court exercises greater scrutiny.

"The twin goals of collective actions are enforcement and efficiency." *Bigger*, 947 F.3d at 1049.  While "it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact ineligible to join[,] . . . in the specific situation where the court has been shown certain individuals may not join the action, it may be *in*efficient to send notice to those people[.]"  *Id.* at 1050 (emphasis original).  Additionally, "[e]ven if efficiency favors sending notice to individuals who entered arbitration agreements, efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device."  *Id.* The Seventh Circuit elaborated on the court's obligations as follows:

> These obligations become prominent when the employer alleges that proposed notice recipients entered arbitration agreements.  This is because, if the defendant provides proof—or is denied the opportunity to provide proof—that 'arbitration employees' are among the proposed notice recipients, then sending notice to those individuals may at least appear to predominantly inflate settlement pressure instead of inform employees of an action in which they can resolve common issues.  Also, in that situation, the risk is high that the notice will appear to facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case.

*Id.*  The Court is persuaded by the Fifth and Seventh Circuits' rationales for considering arbitration agreements at the conditional certification stage, and will therefore follow the Fifth and Seventh Circuits' approach.  *See id.* at 1048-51; *JPMorgan*, 916 F.3d at 501-03.

Under this approach, because Velox

opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, the trial court must take specific steps:

First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.

If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.

But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged 'arbitration employees'—the court must permit the parties to submit additional evidence on the agreements' existence and validity.   The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Bigger*, 947 F.3d at 1050.   Plaintiffs do not directly challenge Velox's assertions about the existence of mutual arbitration agreements; rather, Plaintiffs argue that consideration of such agreements is improper at the conditional certification stage.   [DE 32 at 252, 254-55].   Thus, under the framework set forth in *Bigger*, the Court "may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements."   947 F.3d at 1050.

Velox has produced a "representative example of the agreement that Velox has used" which includes the individual arbitration agreement.   [DE 31-1 at 233, 236-51].   The "Arbitration" section is about two and a half pages long consisting of ten paragraphs that detail the arbitration procedures to be followed if a dispute occurs.   [*Id.* at 243-48].   The arbitration section encompasses this type of proceeding, and mandates that claimants pursue such claims through individual arbitration.   [*Id.* at 245] ("Independent Contractor agrees to arbitrate any claims or controversies that arise out of or are connected with: this Agreement; Independent Contractor's relationship with [Velox]; under either local, state or federal laws, including but not limited to, local, state and federal overtime and minimum wage and hour and employment laws, the Fair Labor Standards Act of 1938," or any state law); *see also* [*id.* at 246] ("this is a class and/or collective action waiver

and Independent Contractor may only resolve the Claims on an individual basis through arbitration.").

Because Plaintiffs have not challenged the existence of arbitration agreements between Velox and prospective collective members, the Court will not permit distribution of the Notice to otherwise eligible opt-in plaintiffs if they are bound by arbitration agreements with Velox.  Yet because of the disagreement among circuits in the significance of arbitration agreements at the conditional certification stage, Plaintiffs were not on notice that they would be required to bring such a challenge to the existence of arbitration agreements at this stage.  Thus, the Court does not foreclose Plaintiffs' ability to challenge the existence or validity of these arbitration agreements. If Plaintiffs "contest[] the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients[,]" the parties will be permitted to introduce limited evidence as to the agreements' existence and validity in conformity with the Fifth and Seventh Circuit approach.  *Bigger*, 947 F.3d at 1050.

### 3.  *Scope of Proposed Collective Class*

Plaintiffs argue that Velox drivers from *all* locations should be included within the class of potential opt-in plaintiffs.  [DE 29 at 168] ("Plaintiffs ask this Court to conditionally certify the following collective: *All* individuals who worked as delivery drivers or couriers for Defendant at any time after February 6, 2016." (emphasis added)).  But Velox argues that Plaintiffs have put forth proof "relate[d] only to [their] experience at . . . Velox's Little Rock, Arkansas location, and not to any of its several other branches."  [DE 31 at 218].

Courts in the Sixth Circuit have limited the geographic scope of a class to the areas where the plaintiff has adduced proof that FLSA-violations occurred.  *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *5 (S.D. Ohio Aug. 10, 2017) (denying nationwide

class certification and limiting certification to location where plaintiffs were employed based on lack of supporting declarations for employees of other facilities); *Thompson v. RGT Mgmt., Inc.*, No. 2:11-CV-02573-AJT-DKV, 2012 WL 3261059, at *3 (W.D. Tenn. June 8, 2012) (limiting certification to location where plaintiffs were employed based on lack of supporting declarations for employees of other facilities), *adopted at* 2012 WL 3260431 (W.D. Tenn. Aug. 8, 2012); *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying certification of nationwide class where declarations were limited to employees of Nashville and Colorado Springs call centers).  Certification here is thus limited to putative class members in the Little Rock, Arkansas region (where Plaintiffs worked).  [*See* DE 1 at 2-3].

## B. Notice

Because conditional certification is warranted, the Court now turns to Plaintiffs' proposed Notice.  [DE 29-1].  Velox objects to Plaintiffs' proposed Notice on several grounds.  [DE 31 at 225].

### 1. *Statute of Limitations Period*

Velox argues that "the temporal scope of Plaintiffs' proposed collective group is overbroad and includes persons whose claims would be time-barred."  [DE 31 at 214].  Velox correctly states that "29 U.S.C. § 255(a) provides that a plaintiff generally has two years to commence an FLSA collective action, but the limitation period increases to three years if the claim consists of a 'willful violation,' which Plaintiffs allege here."  [*Id.* at 225].

"A violation of the FLSA is willful when an employer either knows or shows reckless disregard as to whether its conduct was prohibited by the statute."  *Smith v. Generations Healthcare Servs., LLC*, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988)) (internal quotation marks and formatting omitted).

Here, "[w]hether Defendant['s] alleged FLSA violations are willful is a question better suited for a later stage of the litigation." *Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 4620977, at *4 (W.D. Ky. Sept. 26, 2018) (granting three-year limitations period) (quoting *Smith*, 2017 WL 2957741, at *6) (internal quotation marks omitted); *see Carter v. Paschall Truck Lines, Inc.*, 2019 WL 1576572, at *4 (granting three-year limitations period because 'the most prudent approach at this early stage is to afford notice to a broader range of possible class members"); *see also Abney v. R.J. Corman R.R. Grp., LLC*, No. CV 5:17-260-DCR, 2017 WL 3723657, at *3 (E.D. Ky. Aug. 29, 2017) ("It is inappropriate to attempt to determine whether the defendant willfully violated the FLSA" in the first phase).  As a result, the limitations period for notice will be three years.

Plaintiffs request to send notice to "persons whose potential claims fall within the three years prior to *the filing of the collective action complaint*."  [DE 32 at 255] (emphasis added).  But under the FLSA, for statute of limitations purposes, a collective action is not automatically commenced as to all individual claimants on the day the collective complaint is filed. 29 U.S.C. § 256.  For *named* plaintiffs, their action does commence "on the date when the complaint is filed[;]" however, for unnamed (opt-in) plaintiffs, their action commences on the date on which their "written consent is filed in the court in which the action was commenced."  *Id.*  As a result, notice may be sent only to potential opt-ins who received a paycheck from Velox within three years prior to this Order.[2]  The Court recognizes that even within this time period, some opt-in plaintiffs might ultimately file their consent after more than three years have passed since their

---

[2] In the Sixth Circuit, an FLSA "cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed."  *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting *Archer v. Sullivan County*, Nos. 95-5214, 95-5215, 1997 U.S. App. LEXIS 33052, 1997 WL 72046, at *2 (6th Cir. Nov. 14, 1997)) (internal quotations omitted).

last paycheck; this is an inevitable consequence of the FLSA's use of the consent filing date for statute of limitations purposes. *See* 29 U.S.C. § 256(b); *see also Carter*, 2019 WL 1576572, at *4 ("[T]he filing of the written consent 'commences' an FLSA collective action for that particular claimant. . . . [T]he most prudent approach at this early stage is to afford notice to a broader range of possible class members so that the Court may, as appropriate, entertain subsequent motions" as to the statute of limitations defenses and/or tolling). Thus, the Court will permit distribution of Notice to any potential opt-ins who received their last paycheck from Velox within the three years preceding this Order; however, this does not guarantee that each opt-in plaintiff's claims will be considered timely. Each opt-in plaintiff's individual statute of limitations will require an independent inquiry into their last paycheck from Velox and the date their consent was filed. Such an individualized inquiry is appropriate for the later stages of this matter, after opt-in plaintiffs' consent forms have already been filed. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1078 (S.D. Ohio 2016); *Atkinson*, 2015 U.S. Dist. LEXIS 23630 at *23.

    *2.  Breadth of the Class*

    Velox argues that "[a]ny class definition and Notice should be limited to Velox drivers at the Arkansas location[,] . . . . should exclude potential class members who have agreed to individual arbitration and waived any rights to collective action[,] . . . . [and] should also reflect an appropriate temporal limitation to include only potential members who may have timely claims." [DE 31 at 226]. As discussed above, the Court agrees with each of these limitations. As a result. the Notice may be distributed to:

> All individuals who worked as delivery drivers or couriers for Defendant Velox Express, Inc. in the Little Rock, Arkansas region at any time after March 10, 2018, except for any individuals who entered into individual arbitration agreements with Velox.

3. *Court's Name; Case Caption*

Velox argues that the "Notice should not be in the form of a pleading with a caption and format like a court-filing" because "[s]uch a format improperly suggests that the notice is judicially-endorsed or from the Court." [DE 31 at 226]. It is, however, "standard practice in this jurisdiction that such headings appear on notice and consent forms." *Green v. Platinum Restaurants Mid-America, LLC*, No. 3:14-CV-439-GNS, 2015 WL 6454856, at *5 (W.D. Ky. Oct. 26, 2015). The formatting of Plaintiffs' proposed Notice is thus appropriate.

4. *Velox's Substantive Objections to Plaintiffs' Proposed Notice*

Velox objects to several specific statements in Plaintiffs' proposed Notice [DE 29-1]. [DE 31 at 226-28]. Plaintiffs argue that while the court has "the power and the duty to ensure that the notice is fair and accurate, [such] power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." [DE 32 at 256] (citing *White v. 14051 Manchester, Inc.*, 2012 U.S. Dist. LEXIS 170052, at *15 (E.D. Mo. Nov. 30, 2012)) (internal quotations omitted).

The Supreme Court has held that "[t]he court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989). The Supreme Court outlined the limitations on the court's ability to oversee the Notice and Consent process: "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 173. Thus, the Court reviews the proposed Notice to ensure that it is timely, accurate, and informative, but will not engage in

14

revisions that threaten judicial neutrality.  Each of Velox's objections to the proposed Notice will be discussed in turn.

           a.   <u>Paragraph 1</u>

Velox argues that "Paragraph (1) of Plaintiffs' proposed Notice improperly asserts that 'the right to claim unpaid wages expires after three years . . .' [which] improperly implies that the three-year limitation period for willful violations of FLSA applies to this action." [*Id.* at 226-27].  Velox urges that the "Notice need only state that the recipient's right to assert a claim is subject to a time limit." [*Id.* at 227].  The Court agrees that more accuracy is warranted.  Paragraph 1 of Plaintiffs' proposed Notice must state that under the FLSA, claims for damages are limited to two or three years immediately preceding each opt-in plaintiff's filing of consent, that the applicable statute of limitations has yet to be determined, and that the pendency of this suit does not stop the statute of limitations as to each opt-in plaintiff unless and until their consent is filed.

           b.   <u>Paragraph 3</u>

Velox argues that "Paragraph (3) of Plaintiffs' proposed Notice improperly asserts that 'If the case is not settled between the parties, a trial will be held at the United States District Court for the Western District of Kentucky in Louisville, Kentucky[,]' [which] is an incorrect assertion since a trial is not the only alternative to settlement, and the case could be disposed of on a dispositive motion." [DE 31 at 227].  Plaintiffs counter by arguing that their proposed statement about trial is intended "to remind the reader (who may be far from Kentucky) where the case is pending." [DE 32 at 258].  This paragraph of the proposed Notice must clarify that this litigation is currently in the early pretrial stage, and that no predictions can be made as to the final disposition of this matter.  Plaintiffs may also inform the reader of the venue and location of this litigation.

c. Paragraph 4

Velox argues that "Paragraph (4) of Plaintiffs' proposed Notice should be modified to reflect the proper collective scope." [*Id.* at 227]. The Notice must reflect the updated collective definition, as set forth above. *Supra* Section III.B.2.

d. Paragraph 5

Velox asserts that, somewhere in the Notice, there must be a provision "advis[ing] that the Court can and might decertify a conditionally certified collective action. An opt-in plaintiff's right to participate in the lawsuit may depend on a later determination that opt-ins are similarly situated." [DE 31 at 227]. Such a revision would make the Notice both more accurate and more informative. In Paragraph 5, [3] the Notice must state that the Court may later find that the opt-in plaintiff and the named Plaintiffs are not similarly situated.

e. Paragraph 6

Velox argues that "Paragraph (6) of Plaintiffs' proposed Notice is defective in multiple respects." [DE 31 at 227]. Velox mainly objects to Paragraph 6's failure to warn potential opt-ins about the scope of their discovery obligations after opting in, its failure to warn potential opt-ins that they could be responsible for court costs if they do not prevail, and finally, to its broad definition of who may be entitled to recovery and why. [*Id.* at 227-28]. Plaintiffs argue that "[t]he tone of [Velox]'s request makes clear that the intent is not to inform but to intimidate potential claimants[,]" and that many courts reject such revisions because "noting costs in particular 'would have a chilling effect, and would be more confusing than elucidating.'" [DE 32 at 257] (quoting *Abdulina v. Eberl's Temp. Servs.*, No. 14-CV-00314-RM-NYW, 2015 U.S. Dist. LEXIS 101809, at *20 (D. Colo. Apr. 27, 2015)).

---

[3] This revision concerns opt-in plaintiffs' right to participate in this suit which is discussed in Paragraph 5. [*See* DE 29-1 at 190].

16

The Sixth Circuit addressed this issue in *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012).  In *Frye*, the Sixth Circuit found that a prevailing defendant may be awarded costs and that the district court "reasonably declined to apportion the costs associated with decertification among the opt-in plaintiffs, given that those individuals were not notified that they may be responsible for defense costs and did not consent to such an apportionment."  *Id.* Therefore, although such a warning may chill opt-in participation as Plaintiffs warn, "courts within the Sixth Circuit have held that such concerns do not justify" its exclusion. *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *8 (E.D. Ky. Mar. 14, 2017) (providing notice to opt-in plaintiffs that they may "be responsible for Defendants' costs and attorney's fees if their claims are unsuccessful"); *see Fenley*, 170 F. Supp. 3d at 1075 (providing notice to opt-in plaintiffs that they may be liable for defendant's costs if defendant ultimately prevails).  The inclusion of such a warning gives opt-in plaintiffs "necessary information . . . to make an informed decision about whether to opt-in as a plaintiff.  Certainly, issues of financial responsibility for the suit would play into that determination." *Fenley*, 107 F. Supp. 3d at 1075. As a result, the Notice must apprise opt-in plaintiffs of their potential responsibilities and liabilities if they decide to opt-in to this suit.

Paragraph 6 states that a potential opt-in plaintiff should "understand that [they] may be entitled to recovery *just because* [they] worked as a Driver for Velox Express at some time since February 6, 2016."  [DE 29-1 at 190] (emphasis added).  Plaintiffs argue that this statement "merely restates the central allegation in the lawsuit." [DE 32 at 258].  Even so, as Velox argues, this statement is misleading.  The central allegation in this lawsuit is *not* that employees are entitled to recovery merely because they performed work for Velox at some point.  Plaintiffs must revise this statement to accurately describe their theories of Velox's liability in this suit.  This information

17

must be presented in a manner that enables individuals to accurately understand the causes of action alleged and the potential grounds for recovery.

f.  Paragraph 8

Finally, Velox argues that "Paragraph (8) . . . inappropriately asserts that potential opt-in plaintiffs 'should not be discouraged from participating in this lawsuit merely because [they] may have signed a severance agreement or similar release upon or following termination of [their] work with Velox Express.'"  [DE 31 at 228].  Velox asserts that "[a]ll any Notice need say is an accurate and neutral assertion that the Court will determine the impact of any agreement that the potential opt-in plaintiff has with Velox on any claims in the lawsuit."  [*Id.*].  As proposed, Paragraph 8 is adequate to inform potential opt-in plaintiffs that such agreements are not a barrier to their participation in this lawsuit at this stage; conversely, Paragraph 8 does not represent that such agreements will *never* be a barrier to potential opt-in plaintiffs' participation in this suit.  Thus, Paragraph 8 is sufficiently accurate and informative as proposed.  [*See* DE 29-1 at 190-91] ("The impact that this type of agreement has on any claims you may have against Velox Express is an issue to be decided by the Court.").

5.  *Follow-up Postcard*

Plaintiffs wish to send a follow-up postcard, by U.S. Mail and email, "thirty days after the opt-in period begins, to potential plaintiffs who have not responded to the Notice."  [DE 29 at 170].  Velox does not object to this request.  Plaintiffs may send a follow-up postcard, thirty days after the beginning of the opt-in period, to potential plaintiffs that have yet to respond.

6.  *Notice Period*

Plaintiffs propose a "90-day opt-in period," while recognizing that "there are plenty of examples of courts approving both 90-day opt-in periods and 60-day opt-in periods."  [DE 32 at

259].  Velox objects, arguing that "Plaintiffs provide no special circumstances as to why a notice period longer than 60 days is necessary."  [DE 31 at 230].  Opt-in plaintiffs will have 60 days from the date of the mailing of notice to opt-in.  *Green*, 2015 WL 6454856 at *5 ("The standard in FLSA cases in this jurisdiction is . . . sixty days"); *Rogers*, 2018 WL 4620977 at *5 (granting sixty day opt-in notice period); *Johnston v. J&B Mech., LLC*, No. 4:17-CV-00051-JHM, 2017 WL 3841654, at *4 (W.D. Ky. Sept. 1, 2017) (granting sixty-day opt-in notice because "district courts in the Sixth Circuit routinely order the 60 day opt-in period to commence from the date of mailing the notice and consent forms to putative plaintiffs").

### 7. *Consent Form*

Velox objects to the case caption and pleading format of the consent documents, as well as the use of the phrase "employed as."  [DE 31 at 228].  As discussed above, the case caption and pleading format are appropriate.  *Supra* Section III.B.3.  The phrase 'employed as' is unlikely to cause confusion as used.  [*See* DE 29-2 at 192] ("I was employed as a delivery driver or courier for Velox Express, Inc.[] . . . I understand this lawsuit is being brought under the Fair Labor Standards Act for unpaid wages.").  Even so, in the interest of presenting accurate and complete information to potential opt-in plaintiffs, the words "was employed" shall be substituted with "worked."  Thus, the first sentence of the Consent form shall read: I worked as a delivery driver or courier for Velox Express, Inc. on or after March 10, 2018.

### 8. *Method of Distribution*

"Velox objects to both electronic transmission of any Notice form and to Plaintiffs' proposed electronic transmission form and process."  [DE 31 at 229].  Velox argues that "Plaintiffs' attorneys have made no showing of the necessity for distribution of any notice via electronic means[,]" that it "does not have comprehensive, current email addresses or text numbers

for Plaintiffs' proposed class[,]" and "[e]ven if it does, the time and expense involved in assembling and providing this information would be unduly burdensome." [DE 31 at 229]. Plaintiffs provided a declaration from Plaintiffs' counsel outlining the mail delivery problems that can arise during notice and consent distribution, and why dual notification helps alleviate those issues. [*See* DE 29-6 at 197-202]. Additionally, "a growing number of courts have authorized dual notification as to former employees only, recognizing that employers may not have current residential addresses for them." *Williams*, 2017 U.S. Dist. LEXIS 36195 at *18. Further, dual notification "advances the remedial purpose of the FLSA because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson*, 2015 WL 853234, at *4-5.

"[T]he Court will authorize Plaintiffs to send the Notice and Opt-In Consent Form to former delivery drivers via first class mail and email." *Williams*, 2017 U.S. Dist. LEXIS 36195 at *19. If the potential opt-in plaintiffs include any *current* Velox drivers or couriers, Velox need only disclose their mailing address for distribution of Notice via regular mail, as Velox's contact information for those individuals is likely to be current. Velox's argument that collection of potential opt-in plaintiffs' information will be burdensome is not compelling.

To the extent that Velox has the email addresses for its former drivers and couriers who are potential opt-in plaintiffs, Plaintiffs are entitled to such information. *See Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044-TBR, 2014 WL 2219236, at *5 (W.D. Ky. May 29, 2014) (granting plaintiff access to putative class members' names, job titles, last known address, telephone number, email address, dates of employment, and date of birth). Additionally, though Velox "objects to providing Social Security numbers" for "obvious reasons[,]" [DE 31 at 229], several courts have approved disclosure of a potential opt-in plaintiff's Social Security number

where their mailed notice was returned as undeliverable.  *See e.g.*, *Adams v. Wenco Ashland, Inc.*, No. 1:19-CV-1544, 2020 U.S. Dist. LEXIS 90856, at \*30 (N.D. Ohio May 22, 2020); *Baker v. ABC Phones of N.C.*, No. 19-CV-02378-SHM-TMP, 2020 U.S. Dist. LEXIS 240695, at \*45 (W.D. Tenn. Dec. 22, 2020); *Rodkey v. Harry & David, LLC*, No. 3:16-CV-311, 2017 U.S. Dist. LEXIS 87364, at ,\*14, \*18 (S.D. Ohio June 7, 2017).   However, a number of courts have denied such requests where the other information provided to Plaintiffs should be sufficient.  *See Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 U.S. Dist. LEXIS 18981, at \*15 (N.D. Cal. Feb. 18, 2009); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 31887, at \*10 (N.D. Ohio Apr. 15, 2009); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 751 (M.D. Tenn. 2018). Because Plaintiffs have not identified a particularized need for potential opt-in plaintiffs' social security numbers, "[a]t this juncture, the Court will not require [Velox] to produce social security numbers.  Plaintiffs may move to compel production of social security numbers if this contact information is not sufficient to provide notice to a large percentage of potential class members." *Gilbert*, 2009 U.S. Dist. LEXIS 18981, at \*15.

Velox shall produce: "(1) the names of each and every potential plaintiff" that worked as a driver or courier for Velox any time after March 10, 2018, "including any known aliases they may have gone by or go by now; (2) the last known home and work addresses of the employee . . . ; and (3) email addresses[.]"  [DE 29 at 185].  If Plaintiffs receive "U.S.P.S.-mailed Notices . . . returned as undeliverable," Velox shall produce the dates of birth for the potential opt-ins whose mail notice could not be delivered.  [*Id.* at 185]; *See Gilbert*, 2009 U.S. Dist. LEXIS 18981, at \*15.

Velox also objects to Plaintiffs' use of RightSignature for email distribution, arguing that Plaintiffs "have not demonstrated [its] integrity and reliability[,]" and that "[t]here is no assurance provided, or means of monitoring suggested, to confirm that visitors to the site do not encounter

other, unapproved statements about the case." [DE 31 at 229]. But RightSignature has been approved in several collective actions to distribute Notice and Consent forms. *See Marcil v. Silverleaf Resorts*, Civil Action No. 3:12-CV-4247-N, 2013 U.S. Dist. LEXIS 207104, at *10 (N.D. Tex. Apr. 8, 2013); *Harrison v. Hog Taxi, LLC*, No. 5:19-CV-05025, 2019 U.S. Dist. LEXIS 153980, at *16 (W.D. Ark. Sep. 10, 2019) (collecting cases); *Turner v. Concentrix Servs.*, No. 1:18-cv-1072, 2020 U.S. Dist. LEXIS 16785, at *24 (W.D. Ark. Feb. 3, 2020). Thus, the Court will approve the use of RightSignature for electronic distribution of the Notice and Consent forms in this matter.

Velox argues that Plaintiffs' proposed email subject line, "Court Notice of Unpaid Wages Lawsuit against Velox Express, Inc.[,]" "improperly suggests judicial sponsorship of the message, the lawsuit, or both." [DE 31 at 229]. Because "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action," *Hoffmann-La Roche*, 493 U.S. at 173, Plaintiffs' inclusion of "Court" in the email subject line shall be removed.

Velox objects to Plaintiffs' request for opt-in plaintiffs' contact information "in [an] 'electronically importable and malleable electronic format'" because it wants to produce this information "in any reasonable manner, including print[.]" [DE 31 at 229-30]. But Velox does not represent that it is unable to produce the information in an electronic and importable format, nor does Velox represent that such a format would be unduly burdensome. Additionally, many courts have ordered potential opt-in plaintiffs' information to be produced in an electronic and importable format, including several courts in the Sixth Circuit. *See Atkinson*, 2015 U.S. Dist. LEXIS 23630, at *28; *Ross*, 2014 U.S. Dist. LEXIS 33142, at *10; *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 900 (S.D. Ohio 2018); *Canaday v., Anthem Cos.*, 441 F. Supp. 3d 644, 653 (W.D. Tenn. 2020) (magistrate judge's recommendation that the district judge order

22

information to be disclosed in an electronic and importable format); *Bernardex v. Firstsource Sols. USA, LLC*, Civil Action No. 3:17-CV-613-RGJ, 2019 U.S. Dist. LEXIS 155918, at *26 (W.D. Ky. Sep. 11, 2019). Velox shall produce potential opt-in plaintiffs' contact information to Plaintiffs in an electronic and importable format.

Velox further requests that it is given "a reasonable amount of time, *e.g.*, 20 days, in which to" produce the contact information for potential opt-in plaintiffs. [DE 31 at 230]. Plaintiffs request such information "no later than one week after" this Order. [DE 29 at 186]. Twenty days is a reasonable amount of time for Velox to collect and produce the contact information, especially since the collection process will necessarily require a review of each individual's contract to determine whether they entered into an arbitration agreement. Thus, Velox shall have twenty (20) days from the date of this Order to produce the information.

Finally, Velox finishes with a collection of concerns about the logistics of the notice and consent process. [DE 31 at 230]. Specifically, Velox is concerned about:

> whether signed consent forms are to be sent to the Court's clerk, . . . the procedure for filing the consent forms if the consent forms are not sent directly to the Court's clerk, . . . [whether there will be] stamping or numbering [of] the consent forms and accompanying envelopes as they are received, . . . how to handle consent forms that are illegible, incomplete, or received from persons not on the list of potential opt-ins, . . . procedures for maintaining a running list of names, form numbers, and any other identifying information, . . . the preparing of a final list of opt-ins and distribution of it to counsel and the court, and . . . what constitutes timely return of consent forms.

[*Id.*]. These concerns unnecessarily create complications in the notice and consent process. Plaintiffs' counsel shall receive the returned Consent forms and file them in the record of this matter. As to Velox's concerns about the identification of the individual opt-in plaintiffs' forms, once entered in the record, they will each have a distinct docket entry number, as well as a PageID that will enable all parties to comprehensively identify and discuss each document. The Consent

forms shall be considered returned as of the date they are filed into the record.  29 U.S.C. § 256(b).

Finally, the Court need not determine the procedures for ineligible or incomplete consent forms at

this time; the Court will revisit these concerns in the event that such defective forms are actually

submitted.

## IV.   CONCLUSION

For these reasons, and being otherwise sufficiently advised, the Court **ORDERS** that:

1) Plaintiffs' Motion for Conditional Certification of Collective Action, for Disclosure of Potential Opt-in Plaintiffs' Contact Information, and to Send Court-Approved Notice [DE 29] is **GRANTED in part** as set forth above;

2) This action is conditionally certified as a FLSA Collective Action on behalf of the putative members of the Collective, defined as: All individuals who worked as delivery drivers or couriers for Defendant Velox Express, Inc. in the Little Rock, Arkansas region at any time after March 10, 2018, except for any individuals who entered into individual arbitration agreements with Velox;

3) Within seven (7) days from this Order, Plaintiffs shall provide the revised Notice of Right to Join Lawsuit [DE 29-1], Text of Electronic Transmissions [DE 29-3], and Consent to Join [DE 29-2] forms to Velox;

4) Within seven (7) days from its receipt of the revised documents, Velox shall either (a) inform Plaintiffs that Velox agrees said documents comply with this Order,[4] or (b) file revised wording of documents with the Court,[5] stating with particularity any grounds for its disapproval of the revised documents;

---

[4] Velox's approval of the revised documents does not waive Velox's previous objections to the notices for purposes of appeal.  Velox's review is limited to approval that York's revisions comply with this Order.
[5] Velox and York are encouraged to agree on the appropriate wording and only file with the Court if no agreement can be reached after direct communication between counsel.

5) If Velox agrees that the revised documents are compliant, Plaintiffs' counsel are authorized to disseminate the approved notice documents to all putative members of the Collective via US Mail and/or e-mail;

6) Velox is directed to identify all putative members of the proposed Collective by providing names, last known home and work addresses, dates of employment, phone numbers, and e-mail addresses in an electronic and importable format within 20 days of the entry of this Order; and

7) The putative members of the Collective are given sixty (60) days from the date the notice is mailed to join this case by returning their written consent forms if they so choose.

Rebecca Grady Jennings, District Judge

United States District Court

March 10, 2021