UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:19-CV-00092-CHL

VANESSA YORK, et al.,                                                          **Plaintiffs,**

**v.**

VELOX EXPRESS, INC.,                                                       **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Approval of FLSA Settlement jointly filed by Plaintiffs

Vanessa York, Marshal Emmerling, and Matthew Moss (collectively "Plaintiffs") and Defendant

Velox Express, Inc. ("Velox").  (DN 59.)  Also before the Court is Plaintiffs' Motion for Costs

and Attorneys' Fees.  (DN 63.)  Velox has filed a Memorandum in Opposition to Plaintiffs' Motion

for Attorney Fees.  (DN 62.)  Velox has also filed a Motion for Leave to File a Supplemental

Memorandum in Opposition, (DN 64), to which Plaintiffs have filed a response in opposition.  (DN

65.)  The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this

case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.  (DN

55.)  This matter is ripe for review.

### I.     BACKGROUND

"Velox is a logistics company."  (DN 31, at PageID # 215.)  Plaintiffs all performed courier

and delivery services for Velox in the Arkansas region.  (DN 1, at PageID # 4.)  Plaintiffs allege

that Velox "has a uniform policy and practice of classifying its delivery drivers . . .  as independent

contractors to avoid the minimum wage and overtime requirements . . . ."  (DN 29, at PageID #

171.)  On September 1, 2017, Plaintiffs filed suit against Velox in the Eastern District of Arkansas

asserting claims for damages under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

("FLSA") and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, et seq. ("AMWA"). Complaint at 8–11, York et al v. Velox Express Inc, No. 4:17-cv-00562-KGB (E.D. Ark. Sept. 1, 2017). Plaintiffs also raised a collective action claim for FLSA wage and hour violations on behalf of similarly situated Velox employees. *Id.* at 11–12. On October 5, 2017, Velox moved to transfer the case to this Court, citing a contractual forum selection clause through which the Parties agreed to litigate their claims in Kentucky courts, and on July 17, 2018, the court granted the motion. Defendant's Motion to Transfer, No. 4:17-cv-00562-KGB (E.D. Ark. Oct. 2, 2017); Order, No. 4:17-cv-00562-KGB (E.D. Ark. July 17, 2018). Upon transfer to this Court, the case was brought before Senior United States District Judge Charles R. Simpson, III. Case Assignment, York et al v. Velox Express Inc, No 3:18-cv-00481-CRS (W.D. Ky. July 20, 2018). On August 2, 2018, Velox moved to dismiss the complaint for failure to state a claim, and on October 9, 2018, Judge Simpson issued a memorandum and opinion, finding that Plaintiffs failed to allege facts sufficient to meet the standard necessary to plead plausible FLSA claims. Defendant's Motion to Dismiss, No. 3:18-cv-00481-CRS (W.D. Ky. Aug. 2, 2018); Memorandum and Opinion, No. 3:18-cv-00481-CRS (W.D. Ky. Oct. 9, 2018). Neither the memorandum and opinion nor Judge Simpson's subsequent order granting the motion to dismiss specified whether the complaint was dismissed with or without prejudice.

On February 2, 2019, Plaintiffs filed a new action between the same parties asserting the same causes of action asserted in the complaint dismissed by Judge Simpson, modifying their complaint to address the defects that he found. (DN 1.) Velox promptly filed a motion to dismiss the case on grounds that Plaintiffs' claims were barred by *res judicata* due to Judge Simpson's earlier dismissal. (DN 5.) Velox concurrently filed a motion to reassign the case to Judge Simpson due to its relatedness to the earlier case; on June 6, 2019, the motion was granted, and the case was

reassigned to Judge Simpson.   (DN 6; DN 14.)  On August 7, 2019, Judge Simpson *sua sponte* amended the dismissal order in the earlier case, clarifying that the dismissal was without prejudice. Amended Order, No. 3:18-cv-00481-CRS (W.D. Ky. Aug. 7, 2019).  In light of the amended order, Judge Simpson denied as moot Velox's motion to dismiss the complaint filed in the instant case. (DN 15.)

On January 31, 2020, Plaintiffs moved for conditional certification of the collective action for purposes of discovery of and notice to the putative members of the collective.  (DN 29.)  The motion was granted in part, and the Court conditionally certified the FLSA collective action on behalf of a putative class defined as: "All individuals who worked as delivery drivers or couriers for Defendant Velox Express, Inc. in the Little Rock, Arkansas region at any time after March 10, 2018, except for any individuals who entered into individual arbitration agreements with Velox." (DN 41, at PageID # 296.)  The Court ordered Velox to identify all putative collective members and set forth procedures for Plaintiffs to provide them notice of their right to join the case and a deadline for opting in.  (*Id.* at 296–97.)  Subsequently, eight individuals joined the collective action (collectively, the "Opt-In Plaintiffs").  (DN 43; DN 44; DN 45; DN 46; DN 47.)   The Court then ordered Velox to provide Plaintiffs with tenure, time, and pay records for all collective members to enable them to calculate a settlement demand.  (DN 51, at PageID # 321.)  On October 25, 2021, the Court conducted a settlement conference during which the Parties reached an agreement for a resolution of all claims, subject to Court of approval of the agreement.  (DN 54.)  Specifically, Defendants agreed to pay $15,000 plus reasonable attorney's fees in an amount determined by the Court.  (*Id.*; DN 59-1, at PageID # 342–43.)  The Parties have filed their proposed "Settlement Agreement and Release," which has been signed by Plaintiffs and a representative for Velox.  (DN 59-1.)

## II.    DISCUSSION

### A.  Settlement Approval

"FLSA settlements require approval by either the Department of Labor or a court."[1]  *Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016).  Approval requires a determination that the proposed settlement "is a fair and reasonable resolution of a bona fide dispute."  *Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 6205685, at *5 (W.D. Ky. Oct. 22, 2020) (citing *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *8 (W.D. Tenn. Aug. 4, 2020)).  Additionally, the "court must ensure that the distribution of the settlement proceeds is equitable."  *Crawford v. Lexington-Fayette Urb. Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008).

### 1.  Bona Fide Dispute

"A federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not relinquished their rights to compensation guaranteed by the statute."  *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016).  "Without a bona fide dispute, no settlement could be fair and reasonable. Thus, some doubt must exist that Plaintiffs would succeed on the

---

[1]

> The circuits are split on whether settlements or stipulations of dismissal for FLSA claims require court approval. *Compare Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1352 (11th Cir.1982) (requiring court approval), *and Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir.2015) (requiring court approval), *and Taylor v. Progress Energy, Inc.,* 493 F.3d 454, 460 (4th Cir.2007) (requiring court approval), *with Martin v. Spring Break '83 Prods., L.L.C.,* 688 F.3d 247, 256 (5th Cir.2012) (not requiring court approval).

*Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (noting that the Sixth Circuit has not yet ruled on the issue and finding that "FLSA settlements require approval by either the Department of Labor or a court").  Absent guidance from the Sixth Circuit, the undersigned concludes that the Parties' settlement agreement requires court approval "consistent with the general practice in this judicial district."  *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *1 (W.D. Ky. Sept. 24, 2021) (citing *Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019)).

merits through litigation of their claims." *Id.* (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008)). Even when, as in this case, the parties agree that there is a bona fide dispute, "the Court must make its own assessment." *Id.* at *2.

Here, there is a bona fide dispute as to whether the collective members were employees as defined under the FLSA and thereby covered by the statutory minimum wage and overtime requirements. Plaintiffs allege that they, and the other collective members, were Velox's employees during the relevant period. (DN 1, at PageID # 4, 9.) In its amended answer, Velox denies that Plaintiffs were its employees for FLSA purposes. To its point, as the Parties note in support of their joint motion for settlement approval, "[e]ach Plaintiff in this action signed a contract that stated that he or she was not an employee subject to minimum wage or overtime laws, and if the case had proceeded to trial Plaintiffs would have born the burden of proving they were employees within the meaning of the FLSA." (DN 59-3, at PageID # 355.) Additionally, Velox "continues to deny FLSA violations in the proposed settlement agreement itself." *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *2 (W.D. Ky. Sept. 24, 2021). (*See* DN 59-1, at PageID # 342.)

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). " 'Employ' includes to suffer or permit to work." *Id.* § 203(g). It has been held that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). This economic realities test consists of six factors: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the

work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015). "Whether a FLSA plaintiff is an employee is a mixed question of law and fact." *Id.* at 806. The facts relevant to the above factors remain disputed by the parties and therefore the Court is unable to determine Plaintiffs' status as a matter of law. *See Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992).

### 2. Fair and Reasonable

Courts in this circuit have assessed whether a settlement agreement in a collective action is fair and reasonable using the same factors applied in assessing whether a settlement agreement in a Rule 23 class action is fair and reasonable. *See O'Bryant*, 2020 WL 4493157, at *7; *see also Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019). Those factors include:

> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*O'Bryant*, 2020 WL 4493157 at *7 (citing *Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019)).

### a. Risk of Fraud or Collusion

"In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Ross*, 2016 WL 7320890, at *3 (quoting *Crawford*, 2008 WL 4724499 at *6). *See Love*, 2021 WL 4352800, at *2; *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *2 (W.D. Ky. Apr. 29, 2020). Here, there is no evidence of fraud or collusion between or among counsel. Rather, the settlement was

reached through Court-supervised mediation following motions practice that resulted in conditional certification of the collective action and disclosure of member pay records. (*See* DN 41; DN 51; DN 54.) This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### b. Complexity, Expense, and Likely Duration of Litigation

"[T]he Court must also weigh the risks, expense and delay Plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *5 (W.D. Ky. May 13, 2013) (quoting *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)). The Parties advise the Court that,

> if the case had not settled, the Parties would have spent significant time and resources conducting formal written and deposition discovery, made all the more complicated by the fact that Plaintiffs are based in Arkansas, hundreds of miles from Defendant and the Court. Similarly, if this case had not settled, the Parties would have spent considerable time drafting dispositive motions: both Parties would have likely sought summary   judgment. After the resolution of these issues, the Parties may have faced the prospect of an expensive, lengthy trial as well as possible appeals and post-trial motions.

(DN 59-3, at PageID # 356–57.)

While the Parties have not estimated the monetary cost of proceeding on this course, both parties would likely incur substantial additional legal fees and expenses absent settlement. Indeed, Plaintiffs' counsel claims that Plaintiffs have already incurred $77,562 in attorney's fees, dwarfing the agreed maximum recovery amount for lost wages by more than a factor of six. (*Id.* at 358; DN 63-2, at PageID # 485.) This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### c. Amount of Discovery Engaged in by the Parties

The Court is satisfied that the proposed settlement agreement was reached after pertinent discovery. The Parties exchanged initial disclosures in late 2019, Plaintiff Vanessa York and Velox's vice president Larry Lee have both executed sworn declarations in support of conditional collective certification briefing, and Velox has produced available pay and timekeeping records for the collective members. (DN 29-7; DN 31-1; DN 63-2, at PageID # 472.) While the Parties have not engaged in more substantial discovery, they assert that "the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence." (DN 59-3, at PageID # 357.) *See Burnham*, 2020 WL 2065793, at *3 (finding that the amount of discovery, limited to informal production of payroll and reimbursement records, tipped "slightly in favor" of approving the settlement agreement). This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### d. Likelihood of Success on the Merits

"Given that the parties have not engaged in substantial discovery or motion practice, it is difficult to gauge the likelihood of the Plaintiffs' success at trial." *Burnham*, 2020 WL 2065793, at *3. The Parties agree that "[a]ny eventual damages award would be based on the resolution of many disputed facts." (DN 59-3, at PageID # 358.) However, the Parties also agree that "preparation for the Parties' settlement negotiations enabled counsel to assess the strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interest." (*Id.* at 358.) The Parties also note that the proposed settlement agreement allows the collective to recover more than their own calculated maximum recovery for lost wages. (*Id.* at 358.) In contrast, for an award of the full amount of their lost wages at trial, Plaintiffs would have to prove that the collective members were Velox's employees within the meaning of the FLSA and that Velox

willfully violated the FLSA, and present evidence of each member's particular damages.  To be entitled to a greater award for the full amount claimed liquidated damages, Plaintiffs would be required to rebut Velox's defense that it acted in good faith.  This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### e.    Opinions of Class Counsel and Class Representatives

The Court takes notice of the Parties statements concerning their respective counsel's extensive experience advising clients in employment litigation.  (*See* DN 59-3, at PageID # 358.) The Parties state that counsel "have advised their respective clients regarding the settlement, and they have recommended judicial approval." (*Id.* at 358–59.)  "The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement."  *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) (internal citations omitted).  Additionally, the Plaintiffs assented to the settlement agreement, and Plaintiff Vanessa York participated in the settlement conference. (DN 54; DN 59-2, at PageID # 346–48.)  This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### f.    Reaction of Absent Plaintiffs

Courts in this circuit have indicated that this factor has minimal application to collective actions, because unlike class actions, putative members claiming an interest in a collective action must opt to join the case as party plaintiffs at which point they are no longer "absent."  *See Crawford*, 2008 WL 4724499, at *8 (noting that "there are no 'absent class members,' as there are in an opt-out class action"); *Love*, 2021 WL 4352800, at *2 ("Unlike in a Rule 23 settlement, no absent class members exist in this opt-in collective action.").  Depending on the circumstances of the case, this Court has approached this factor ranging from choosing not to consider it to affording

it substantial weight in its overall fairness analysis. *Compare Mitcham*, 2019 WL 5496023, at *3 (omitting the sixth factor from its analysis), *with Burnham*, 2020 WL 2065793, at *3 (noting that although FLSA actions do not include absent plaintiffs, this factor favored a fairness finding because "the Court is unaware of any objections to the Settlement Agreement") *and Ditsworth v. P & Z Carolina Pizza*, No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) (finding "the fact that not one class member objected to the settlement agreement to be most persuasive" and that "[t]his factor thus weighs heavily in favor of final approval"). When applying this factor, courts in this circuit generally consider the objections by opt-in plaintiffs, or a lack thereof. *See, e.g.*, *Ditsworth*, 2021 WL 2941985, at *4; *Burnham*, 2020 WL 2065793, at *3; *Ross*, 2016 WL 7320890, at *4; *Crawford*, 2008 WL 4724499, at *8. Such consideration presupposes that the opt-in plaintiffs were provided notice of the settlement and had an opportunity to raise objections. Accordingly, in some cases, courts have considered the sufficiency of notice and the opportunity for the opt-in plaintiffs to be heard in weighing this factor. *See, e.g.*, *Bailey v. Paradies Shops, LLC.*, No. 2:20-CV-2610, 2021 WL 3662466, at *5 (S.D. Ohio Aug. 18, 2021); *Crawford*, 2008 WL 4724499, at *8 (finding that "less-involved plaintiffs have had an opportunity to express any objections to the settlement" when opt-in plaintiffs were invited to voice objections through testimony at the fairness hearing or letters to the court and counsel responded to all objections at the fairness hearing).

Rule 23 sets forth specific procedures for class action settlement approval, including a preliminary fairness determination, an opportunity for class members to opt out, an opportunity for class members to object, a fairness hearing, and final approval. Fed. R. Civ. P. 23(e). Courts considering FLSA settlements do not impose the degree of procedural safeguards required under Rule 23. *Batista v. Tremont Enterprises*, No. 1:19CV361, 2019 WL 3306315, at *1 n.1 (N.D.

Ohio July 22, 2019) (noting that the parties did not request a fairness hearing "[n]or is the Court required to hold one") (citations omitted); *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *7 (W.D. Tenn. Dec. 22, 2020) ("*Where appropriate*, the court preliminarily approves a proposed FLSA collective action settlement, authorizes notice of settlement, and schedules a fairness hearing.") (emphasis added).  Some courts have found that "notice of the settlement and an opportunity to file a written objection should be provided as to all Opt–In Plaintiffs."  *Goldsby v. Renosol Seating*, LLC, No. 2:08-0148-KD-N, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013) ("The Court has reviewed many of the FLSA collective action cases in this circuit as well as others, and finds that the majority of the courts approve a settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object."). *See Tommey v. Computer Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015) ("[W]hen a hearing is not requested, the plaintiff, at the very least, must notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object."); *Judd v. Keypoint Gov't Sols., Inc.*, No. 18-CV-00327-RM-STV, 2021 WL 75224, at *3 (D. Colo. Jan. 8, 2021). Other courts have gone further, holding that an opt-in plaintiff cannot be bound by a settlement unless he or she "is given an opportunity to affirmatively join the settlement, just as they affirmatively joined the collective." *Marichal v. Attending Home Care Servs.*, LLC, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020) (citation omitted).  The Sixth Circuit has not clarified the procedural rights that should be afforded to opt-in plaintiffs with respect to settlement nor the limits on a lead plaintiff's ability to enter into settlement on their behalf.  However, the Sixth Circuit recently discussed the breadth of a lead plaintiff's representative capacity in FLSA collective actions in the

context of personal jurisdiction. *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 394 (6th Cir. 2021). The issue in *Canaday* was whether a court may exercise specific personal jurisdiction over the claims raised by out-of-state opt-in plaintiffs. The lead plaintiff argued that, consistent with the rule governing personal jurisdiction in Rule 23 class actions, a district court could exercise personal jurisdiction over a defendant for the claims brought by opt-in plaintiffs as long as the lead plaintiff satisfies personal jurisdiction requirements. The court rejected that argument, reasoning,

> But Civil "Rule 23 actions are fundamentally different from collective actions under the FLSA," *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013), and those differences require different approaches to personal jurisdiction. A Rule 23 class action is representative, while a collective action under the FLSA is not. From 1938 until 1947, the FLSA "gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). In response to excessive representative litigation, Congress added the opt-in provision to the FLSA in 1947. *Id.*; *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 255 (3d Cir. 2012) (noting that the amendment "banned what it termed 'representative actions' "); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) ("Congress amended § 216(b) in 1947 expressly to put an end to representational litigation in the context of actions proceeding under § 216(b)."). The amendment served the "purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche*, 493 U.S. at 173, 110 S.Ct. 482. A collective action brought under it "cannot be deemed a representative action on behalf of the individual employees of the type governed by a Rule 23 action." *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981).
>
> That means all plaintiffs in an FLSA collective action must affirmatively choose to "become parties" by opting into the collective action. *Genesis Healthcare*, 569 U.S. at 75, 133 S.Ct. 1523; *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 n.1 (7th Cir. 2020). Once they opt in, these plaintiffs become "party plaintiff[s]," 29 U.S.C. § 216(b), enjoying "the same status in

> relation to the claims of the lawsuit as do the named plaintiffs,"
> *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003).

*Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402–03 (6th Cir. 2021).

It is hard to imagine that an opt-in plaintiff enjoys the same status as a lead plaintiff if the lead plaintiff can sign away the opt-in plaintiff's rights, in this case for as little as $50, without notice of or consent to the agreement. This Court has addressed whether opt-in plaintiffs that have consented to join an action must be provided notice of a settlement and an opportunity to object in order to be bound by the settlement. *Jones*, LLC, 2020 WL 6205685, at *4. In *Jones*, the parties had argued that "[b]ecause members of an FLSA collective must consent to join the suit and agree to be bound by any settlement reached by the named plaintiffs and their counsel, preliminary notice of the settlement and an opportunity to object are not required." *Id.* The Court agreed, noting that the court-approved notice of right to join informed the opt-in plaintiffs that in choosing to join, they "designate Plaintiff and their attorneys as your agents to make binding decisions on your behalf concerning the lawsuit." *Id.*

Here, each of the Opt-In Plaintiffs "consent[ed] to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court." (*See, e.g.*, DN 43, at PageID # 300.) However, unlike in *Jones*, there is no indication in the record that the Opt-In Plaintiffs conferred settlement authority to lead Plaintiffs. In fact, because the Parties have not filed the revised notice of right to join that was sent to the Opt-In Plaintiffs with their consent forms, it is unclear exactly how the Opt-In Plaintiffs were advised of their rights and obligations as party plaintiffs. Additionally, the Parties have not indicated whether the Opt-In Plaintiffs were notified about the settlement agreement or provided any opportunity to object, and the proposed settlement agreement does not give the Opt-In Plaintiffs the ability to opt out of the settlement or modify its terms. *See O'Bryant*, 2020 WL

4493157, at *11; *Love*, 2021 WL 4352800, at *7 (requiring "that counsel file a revised proposed notice of settlement in the docket within 30 days of this order so that the Court can ensure the notice sufficiently advises potential collective members of their right to funds and their other rights and obligations under the settlement"). Because all other available evidence indicates that the settlement is fair, reasonable, and adequate, the Court will conditionally approve the proposed settlement agreement, pending the filing of a supplemental statement representing whether the Opt-In Plaintiffs conferred settlement authority to the lead Plaintiffs or to counsel in advance of the settlement conference, were provided notice and an opportunity to object to the proposed settlement agreement, or otherwise assented or agree to the terms of the proposed settlement agreement.

### g.  Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and [collective] action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir.1982)). Here, Plaintiffs first brought their claims against Velox in September 2017 and have been waiting four-and-a-half years for recovery since then. Additionally, during this time Velox has been treading through the unusual procedural path while actively defending relatively low-value claims. As the Parties' position demonstrate, settlement advances the public interest in certainty. *See In re Flint Water Cases*, No.

14

516CV10444JELEAS, 2021 WL 5237198, at *26 (E.D. Mich. Nov. 10, 2021), *motion to certify appeal denied*, No. 5:16-CV-10444, 2021 WL 5833416 (E.D. Mich. Dec. 8, 2021), *reconsideration denied*, No. 5:16-CV-10444, 2022 WL 504415 (E.D. Mich. Feb. 18, 2022).  This factor supports a finding that the proposed settlement is fair, reasonable, and adequate.

### 3.  Equitable Distribution

"As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable . . . The need for equity in distributions of proceeds is no less in a collective-action settlement."  *Crawford*, 2008 WL 4724499, at *9 (citations omitted).

Here, the proposed settlement agreement provides for payment in the amount of $500 to each of the named Plaintiffs as a service award.  (DN 59-1, at PageID # 342.)  "The remaining payments will be apportioned among the Plaintiffs relative to each Plaintiff's claimed damages as calculated by Plaintiffs' counsel (the "Settlement Fund")."  (*Id.*)  Appendix A to the proposed settlement agreement sets forth the amount to be paid to each collective member.  (*Id.* at 350.)  Two Opt-In plaintiffs have no listed allocated damages share and will receive a $50 "Minimum Payment."  (*Id.*)  The remaining members will receive an allocated damages share in amounts ranging from $135.59 to $3,861.11.  (*Id.*)  The Parties state that the amount "each Plaintiff will receive is based on the number of weeks he or she worked and the number of deliveries he or she made for Defendant as a courier during the limitations period."  (DN 59-3, at PageID # 358.)  According to the Parties, "[u]nder the proposed Agreement, each Plaintiff will receive approximately 106% of his or her unpaid wages."  (*Id.* at 353.)

The Court finds that the proposed distribution is equitable because "it apportions funds based on the circumstances of each [collective] member's employment by Defendants."  *Burnham*,

2020 WL 2065793, at *4.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855, 119 S. Ct. 2295, 2319, 144 L. Ed. 2d 715 (1999) ("Fair treatment in the older cases [before the implementation of Rule 23] was characteristically assured by straightforward pro rata distribution of the limited fund.").  The Court further finds that the service award to the three named Plaintiffs is equitable. "Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.' "  *Ross*, 2016 WL 7320890, at *5 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)).  Based on Plaintiffs' counsel's billing records, it is apparent that the three named Plaintiffs expended several hours meeting and communicating with counsel and facilitating fact investigation and that the Opt-In Plaintiffs did not assume similar responsibilities.  (*See* DN 63-2.)  The Opt-In Plaintiffs received a substantial benefit, in some cases far greater than the amount allocated to the named Plaintiffs, and the service award does not reduce the payment to collective members to an amount less than their actual damages.

### B.  Attorney's Fees and Costs

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  "An award of attorney's fees under § 216(b) is mandatory."  *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014) (citing  *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir.1984)).

### 1. Motion for Leave to Supplement

Following the October 25, 2021 settlement conference, the Court set a deadline for simultaneous briefs as to the amount of attorney's fees.  (DN 54.)  The Court provided that "[n]o responses or replies shall be permitted."  (*Id.* at PageID # 329.)  On December 20, 2021, the Parties timely filed their simultaneous briefs.  (DN 62; DN 63.)  In its brief, Velox stated:

> Because the Court has ordered simultaneous briefing of the attorney fee issue, Velox must presume that plaintiffs will request a fee of $71,935.50, the cap to which they agreed.
> . . .
> Velox respectfully reserves the right to seek leave to file a response to plaintiffs' submission. Plaintiffs bear the burden of establishing a reasonable fee, but with simultaneous briefing Velox does not know and must therefore anticipate how plaintiffs will attempt to meet that burden. Due process requires that Velox have an opportunity to meet plaintiffs' actual argument when made.

(DN 62, at PageID # 364.)

On January 20, 2022, Velox filed its motion for leave to file a supplemental memorandum and attached as an exhibit its supplement.  (DN 64; DN 64-1.)  The same day, Plaintiffs filed their response in which they note that simultaneous briefing was agreed to by the Parties and the Court and state that they "vehemently oppose any *post facto* change to the briefing rules."  (DN 65, at PageID # 551.)  Plaintiffs also argue that Velox's motion is improper because the "supplemental memorandum does not rely on any new caselaw that has arisen in the last six weeks, nor does it cite to any facts that were unavailable to the Parties at the time of the briefing deadline."  (*Id.* at 552.)

The Court's October 27, 2021 order precluded responsive filings regarding the Parties' briefs, and that order, regardless of Velox's purported reservation of rights, controls.  Given that responsive filings were not permitted, Velox's motion for leave to supplement "is properly

construed as a motion for leave to file a surreply, which is routinely denied by this court." *Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 187 F. Supp. 2d 749, 752 n.1 (W.D. Ky. 2001). *See U.S. Xpress, Inc. v. Streamline, LLC*, No. 3:15-CV-00205-DJH, 2015 WL 13674854, at *2 (W.D. Ky. Aug. 3, 2015) (quoting *Gen. Elec. Co.*, 187 F. Supp. 2d at 752 n.1) ("Given that 'surreplies are not contemplated under the Local Rules,' the motion for leave to file a surreply is **DENIED.**"). A motion for leave to file a surreply, "when utilized for the purpose of supplementing argument on pending motions, should be used sparingly and for new, controlling case law." *Gen. Elec. Co.*, 187 F. Supp. 2d at 752 n.1.

While Velox claims some disadvantage in briefing the issue of reasonable attorney's fees without knowing the amount Plaintiffs would ultimately request, in reality, the briefing schedule placed the Parties on equal footing. Plaintiffs were required to initially provide counsel's billing records, and the Parties then had an equal opportunity to scrutinize the records and argue their respective positions as to the reasonable fee. Plaintiffs used this opportunity to deduct hundreds of entries before arguing that its lodestar calculation is reasonable. (DN 63-1, at PageID # 437, 446–48.) (*See generally* DN 63-2.) Velox used the opportunity to identify nine duplicative entries and all entries billed before the period in which the prior action in this case was dismissed and after the date of the settlement conference, before arguing that Plaintiffs could not recover these fees.[2] (DN 62; at PageID # 376–77; DN 62-1.) Additionally, Velox chose to dedicate much of its brief to arguing that the FLSA's fee-shifting provision does not apply and alternatively that the Court should apply narrower fee calculation method. (*See* DN 62, at PageID # 375–80.) The content of Velox's supplement brief demonstrates the lack of any disadvantage in the simultaneous

---

[2] In its brief, Velox references additional entries in counsel's billing records as objectionable, such as hours billed by attorneys who are not counsel of record, billing for conferences with unknown individuals, and entries that "appear to reflect at least some charges for purely clerical work." (DN 62, at PageID # 376–77.) However, Velox does not itemize these entries for purposes of a lodestar calculation.

briefing.  It references no new and controlling caselaw, nor any facts or law unavailable to it at the

time of filing.  Additionally, Velox does not use the supplement to dispute the scope of Plaintiffs'

proposed billing deductions; rather, it defers to those deductions in offering an alternative lodestar

calculation.  (DN 64-1, at PageID # 510; DN 64-3.)  Moreover, as its central purpose, the

supplement "reiterates [Velox']s argument that the Court should" apply the narrower fee

calculation method.  (DN 64-1, at PageID # 507.)  Based on these facts, it is difficult to conclude

that Velox's supplemental brief was anything more than a demand for the last word.

    Notwithstanding the foregoing, denying Velox's motion will have little practical effect at

this juncture.  The supplemental brief has been filed in the record, and the Court is now aware of

the arguments and authorities therein.  And just as Velox would not have been prejudiced without

responsive briefing, Plaintiffs are not prejudiced by allowing the supplement, because "the amount

of the award is within the discretion of the judge."  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th

Cir. 1994).  *See Smith v. Stellar Recovery, Inc.*, No. 15-cv-11717, 2017 WL 1336075, at *8, 2017

U.S. Dist. LEXIS 35658 at *23 (E.D. Mich. Feb. 7, 2017) ("The court is capable of reviewing the

authorities and assigning them the appropriate weight based on the facts of the case.").  Therefore,

the Court will grant Velox's motion and, when appropriate, consider the arguments presented in

determining the amount of reasonable attorney's fees.

## 2.  Prevailing Party

    "The fact that [a plaintiff] prevailed through a settlement rather than through litigation does

not weaken her claim to fees."  *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d

653 (1980).  Rather, the key question in determining prevailing party status is whether the party

"has succeeded on any significant claim affording it some of the relief sought . . . . [T]he plaintiff

must be able to point to a resolution of the dispute which changes the legal relationship between

itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989).

Here, the three claims raised by the named Plaintiffs' complaint all sought relief for lost wages. Plaintiffs obtained an order conditionally certifying the FLSA collective action, and after distributing Court-approved notices to putative collective members, eight individuals opted to join the collective as party plaintiffs. Under the terms of the proposed settlement agreement, Velox has agreed to pay each of the eleven collective members an amount in excess of their alleged actual economic damages. In exchange, the Plaintiffs agree to a general release of liability for employment claims against Velox and the Opt-In Plaintiffs agree to a release of liability for wage claims arising during the relevant period against Velox. The Parties agree that the proposed settlement agreement "represents a fair and reasonable resolution to a *bona fide* dispute over Plaintiffs; FLSA and AMWA claims." (DN 59, at PageID # 340.) Having recovered substantial relief sought by their claims through an agreed change their legal relationship with Velox, Plaintiffs easily meet the "generous formulation" established by the Supreme Court for prevailing party status. *Texas State Tchrs. Ass'n*, 489 U.S. at 792.

Velox argues that plaintiffs are not prevailing parties for purposes of an award of attorneys' fees because they recovered "roughly half what [they] sought after having failed at obtaining conditional certification of a nationwide collective stretching back to before the filing of the Dismissed Action." (DN 62, at PageID # 376.) Velox cites the Tenth Circuit's statement in *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) that "[n]uisance settlements, of course, should not give rise to a 'prevailing' plaintiff." (*Id.* at 375–76.) Velox notes that this quotation was referenced approvingly by the Supreme Court *in Texas State Teachers Association* and argues that "the $13,500 in settlement funds allocated to the actual legal claims of

the three named plaintiffs and eight opt-ins is effectively a 'nuisance' settlement." (*Id.*)  However, Velox's "view of what constitutes a prevailing party is too narrow." *Chicano Police Officer's Ass'n*, 624 F.2d at 130 (finding that the plaintiffs were prevailing parties when the defendant agreed to pay an amount that was "de minimus in view of what the back pay award might have been" solely to avoid further litigation).

First, the settlement amount, while modest, is slightly higher than Plaintiffs' approximation of the respective lost wages to which they claim they are entitled under the FLSA.  Thus, what to Velox is a nuisance settlement, to Plaintiffs is "the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1135.  In *Fegley*, the Sixth Circuit reviewed an award of $40,000 for attorney's fees following a judgment for $7,680.  *Id.* at 1134.  On appeal, the defendants argued that the plaintiff was not a prevailing party and that the fee award was unreasonable given the "nominal" damages awarded.  *Id.*  The Sixth Circuit affirmed the fee award, holding that "Courts should not place an undue emphasis on the amount of the plaintiff's recovery" in applying the FLSA's fee shifting provision because its intended purpose is to ensure access to the judiciary for wage and hour claims.  *Id.* at 1134–35.  Second, Velox did not just agree to the $13,500 payment.  Under the proposed settlement agreement, Velox agreed "to pay Plaintiffs' counsel any costs and attorneys' fees which may be found reasonable by the Court and awarded by it upon Plaintiffs' filing of a Motion for Fees and Costs," subject to Plaintiffs' agreement "that their claim for attorneys' fees will not exceed $71,935.50."  (DN 59-1, at PageID # 343.)  This was no small concession; "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff." *Marek v. Chesny*, 473 U.S. 1, 7, (1985) (citation and internal quotation marks omitted).  Velox decided that this arrangement was preferable continuing to face

Plaintiffs' claims, and therefore agreed to afford Plaintiffs an additional measure of the relief they sought.

The fact that Plaintiffs did not get everything they asked for in their complaint does not preclude an award of attorney's fees. Rather, "the degree of the plaintiff[s'] overall success goes to the reasonableness of the award [] [], not to the availability of a fee award *vel non.*" *Texas State Tchrs. Ass'n*, 489 U.S. at 793. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013) (noting that prevailing party status does not depend on a particular level of success and, "[i]nstead, plaintiffs' limited success goes to the reasonableness of the fee award").

### 3. Method of Calculation

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" method or "lodestar" method. *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. The Sixth Circuit has explained,

> To determine the lodestar figure, the court multiplies the number of hours "reasonably expended" on the litigation by a "reasonable hourly rate." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995). The court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Adcock– Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir.2000). In contrast, to employ the percentage of the fund method, the court determines a percentage of the settlement to award to class counsel. *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F.Supp.2d 907, 922 (N.D.Ohio 2003).
>
> As the two methods measure the fairness of the fee with respect to different desired outcomes, "it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings*, 9 F.3d at 516. District court decisions must include "a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee" in order to allow effective appellate review for abuse of discretion. *Id.*

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016).

Plaintiffs propose an award of attorney's fees based on the lodestar method. (DN 63-1, at PageID # 437–49.) Velox argues that Plaintiffs have "provided an inadequate basis for" applying the lodestar method. (DN 62, at PageID # 381.) For example, Velox notes that counsel's billing records show hours billed by attorneys who are not counsel of record, billing for conferences with unknown individuals, entries for hours worked in connection with the previous dismissed actions, and entries that "appear to reflect at least some charges for purely clerical work." (*Id.* at 376–77.) Velox asserts that "the multiple inconsistencies, along with the multiple duplicate entries previously noted, calls the accuracy and reliability of the entire itemization into question" and as a result, there is no foundation upon which to base a lodestar calculation. (*Id.* at 378.) Velox argues that the Court should instead apply the percentage-of-the-fund method and award Plaintiffs 40% of the settlement amount because it is "a better and more reasonable reflection of the results obtained in this case while still fulfilling the purpose of a fee award." (DN 64-1, at PageID # 507.) Velox deems 40% the appropriate rate because this is the rate agreed upon by the lead Plaintiffs and counsel as provided in their fee agreement and because it is consistent with the percent-of-the-fund rates accepted by this Court in other FLSA cases. (*Id.* at 513; DN 62, at PageID # 377.) Plaintiffs' brief does not address the percentage-of-the-fund method, but they do assert that "[c]ourts do not reduce fee awards based on proportionality and routinely award an attorney's fee that is higher than the amount recovered for the plaintiff." (DN 63-1, at PageID # 433.) They also discuss *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021), in which the Sixth Circuit held that capping an attorney's fee award under the FLSA at a fixed percentage of recovery is an abuse of discretion. (*Id.*)

Based on the circumstances of the case and the policy interests targeted by the FLSA's fee-shifting provision, the Court finds that applying the percentage-of-the-fund method is not

appropriate here. "The purpose of the FLSA's mandate of an award of reasonable fees to prevailing plaintiffs is to remedy concerns over situations where 'the monetary value of [a plaintiff's] claims is often too small to support the cost of litigating them.' " *Smyers v. Ohio Mulch Supply Inc.*, No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021) (quoting *Rembert*, 986 F.3d at 617). Without it, "many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to 'attract competent counsel' to represent them." *Rembert*, 986 F.3d at 617 (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Those concerns are highly relevant here. The collective members were all employed as low-wage courier drivers; all claim under $4,000 in lost wages and most claim under $1,000. Even aggregating the full recovery of the alleged actual damages of the entire eleven-member collective, Velox characterizes the amount as a nuisance value. The record does not indicate whether any of the Opt-In Plaintiffs previously sought out legal representation to assist in recovering their lost wages, but none retained separate counsel after joining this case. Notwithstanding these facts, Velox asserts that in requesting a lodestar award, Plaintiffs "do not reckon with the relatively numerous similar decisions from this jurisdiction in which courts apply the percentage-of-the-fund method." (DN 64-1, at PageID # 513.) While the cases Velox cites are similar to this one in that they involved FLSA collective actions, Velox overlooks critical differences. This is not a case in which the parties mutually assented to a percentage-of-the-fund award under the terms of their settlement agreement. *Love*, 2021 WL 4352800, at *6 (finding that "[e]xcessively cutting parties' agreed-upon rates might deter qualified counsel from taking on the risk of bringing types of cases Congress has authorized"); *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *15 (E.D. Ky. May 12, 2020); *Jones*, 2020 WL 6877577, at *5 (explaining that, among the reason it chose the method, "[f]irst, the parties have urged the Court to apply the percentage-

of-recovery method"). Rather, here, the Parties agreed that attorney's fees would be determined independent of the amount to be paid to the collective, either as "resolved by the Parties" or in an amount deemed reasonable by the Court but not exceeding $71,935.50. (DN 59-1, at PageID # 343.) This is also not a "substantially complex" case that resulted in an impressive settlement such that the percentage-of-the-fund calculation yields an award that is in line with a lodestar calculation. *See Love*, 2021 WL 4352800, at *5 (applying percent-of-the-fund to $650,000 settlement "the two approaches generate roughly commensurate amounts"); *Ditsworth*, 2021 WL 2941985, at *6 (finding an agreed 40% of the fund unreasonable and reducing the award to 33% of the fund, noting that "this fee equates to a rate of $424.80 per hour for the 181.5 hours claimed by Plaintiff's counsel, which is in line with the [lodestar] fee approved by this Court in *Burnham*"); *Burnham*, 2020 WL 2065793, at *1 (applying lodestar method following a $36,000 settlement). Based on these facts, the Court finds that applying the percentage-of-the-fund method here would undermine the purpose of the FLSA's fee shifting provision and will therefore apply the lodestar method. Further, the Court finds that counsel's billing records sufficiently describe the work performed to support a lodestar calculation,[3] and that any deficiencies identified by Velox are more properly addressed below in determining whether billed hours were reasonably expended.

### 4. Reasonable Rates

"The party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011) (quoting *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir.1999)). In assessing

---

[3] Counsel is not "required to record in great detail how each minute of his time was expended" but counsel "should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. The Sixth Circuit has deemed itemized billing records sufficient where such records specify for each entry: (a) the date of billed time; (b) the individual recording the time; (c) the fractional hours billed; (d) the specific task completed; and (e) the information identifying the client. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553–54 (6th Cir. 2008). Such entries are sufficient even without explicitly detailed descriptions. *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005).

whether a rate charged is reasonable, "courts use as a guideline the prevailing market rate . . . that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). Here, counsel billed the following rates which Plaintiffs also apply in their lodestar calculation.

| Name | Years of practice | Hourly rate |
|------|-------------------|-------------|
| Christopher Turansky | 2 | $220 |
| Courtney Harness | 17 | $360 |
| Josh Sanford | 21 | $470 |
| Steve Rauls | 11 | $350 |
| Vanessa Kinney | 15 | $360 |
| Law Clerk | n/a | $110 |
| Paralegal | n/a | $145 |
| Staff | n/a | $90 |

The Parties dispute the reasonable hourly rate for Plaintiffs' counsel in this case and each offer their own formulas for determining the prevailing market rate. Plaintiffs argue that the above rates are reasonable because the rates for all attorneys other than Josh Stanford ("Sanford"), ranging from $220 to $360, are below the national average "for plaintiffs' attorneys engaged in complex litigation in 2020[,] $445." (DN 63-1, at PageID # 438.) Plaintiffs also argue that "the requested are comparable to rates awarded in Kentucky district courts." (*Id.* at 439) (collecting cases). Notwithstanding this assertion, Plaintiffs argue that rates that are "slightly too high in a particular district" can be the basis for a reasonable fee given particular circumstances. (*Id.* at 440.) For example, Plaintiffs cite *Sheffield v. Stewart Builders, Inc.*, CV 19-1030, 2021 WL 951897, at *5 (S.D. Tex. Mar. 10, 2021) in which the court awarded the rate requested for Stanford,

$450 per hour, despite the rate exceeding the local median for employment attorneys due to his "extensive experience." (*Id.*) In response, Velox argues that the requested rates are inconsistent with Kentucky's prevailing market rate, as well as the rates approved for counsel's work by courts in other jurisdictions. (DN 64-1, at PageID # 508–10.) For example, Velox notes that "[t]he *Sheffield* decision used the more expensive Houston market to also approve an hourly rate of 'only' $285 for attorney Steve Rauls as opposed to the $350 rate sought here, $300 for attorney Vanessa Kinney as opposed to the $360 sought here, $125 for a paralegal as opposed to the $145 sought here, and $90 for a law clerk as opposed to the $145 sought here." (*Id.* at 510.) With respect to Sanford's requested rate, Velox asserts that recent decisions from this Court in similar FLSA actions have not endorsed a rate exceeding $400. (*Id.* at 508.) Velox concludes that "to the extent the Court uses the lodestar method here it should do so using the reduced hourly rate of $400 for attorney Sanford since plaintiffs cite no Kentucky authority actually approving more in a lodestar calculation and the reduced hourly rates for the others approved in the recent *Sheffield* decision from a pricier market and upon which plaintiffs themselves rely." (*Id.* at 510)

To the extent that both Parties request that the Court defer to rates applied to counsel's work in other jurisdictions, neither party reaches the relevant inquiry. While courts in this circuit may apply an out-of-town rate for work done by a non-local specialist, they must first "determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). "If competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by the out-of-town specialist." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citing *Hadix*, 65 F.3d at 535).

While Sanford highlights the unique qualifications and experience of the attorneys that worked on this case, "he offers nothing showing that the case 'required specialized expertise that was *unavailable in the [local] legal market*' or that counsel local to the area lacked the resources or ability to handle the case." *Clark v. W. Iris Transp., Inc.*, No. CV 18-168-DLB-CJS, 2020 WL 2781601, at *4 (E.D. Ky. Feb. 27, 2020), *report and recommendation adopted*, No. CV2018168WOBCJS, 2020 WL 2789910 (E.D. Ky. Mar. 19, 2020) (quoting *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018)).  With respect to Velox's proposal that the Court apply the rates awarded to counsel in an FLSA action by the Southern District of Texas, except capping Sanford's rates based on awards in similar cases by courts in Kentucky, Velox has not explained why the rates applied in one case in a different region of the country are indicative of what similarly situated attorneys could expect to command in the local market.  Velox merely asserts, without citing any authority, that because "those rates were appropriate based on the more expensive Houston legal market less than a year ago they are more than appropriate in the Louisville market now."  (DN 64-1, at PageID # 510.)  Absent a more specific and well supported link between the rates applied in *Sheffield* and the prevailing market rate for attorneys of comparable skill and experience in FLSA actions like the instant one in Kentucky, *Sheffield* is of little relevance to the Court's inquiry.  Therefore, out-of-town rates are not an appropriate starting place for the lodestar calculation, and the Court instead determines the local market rate that counsel reasonably expect to command in this venue based on the Court's expertise and judgment as well as rates found reasonable by courts in Kentucky in similar cases.

Beginning with lead counsel, Sanford has over twenty years of practice experience and has represented plaintiffs in wage disputes in thousands of cases.  (DN 63-3, at PageID # 486–90.)  He also has extensive experience in federal court and class and collective actions.  (*Id.*)  Given these

facts, he could reasonably expect to command a rate nearing the top of the range typically awarded to attorneys in the local market.  "And federal courts in and around Kentucky recently have found that hourly rates between approximately $300 and $400 represented reasonable partner rates in employment disputes." *Hendricks v. Quickway Transportation, Inc.*, No. 3:20-CV-710-BJB-CHL, 2021 WL 1235265, at *4 (W.D. Ky. Apr. 2, 2021) (collecting cases).  This is not to say that an attorney of Sanford's stature would be unable to finds clients in the state willing to pay the requested $470 per hour, but the prevailing market rate "is not necessarily the exact value sought by a particular [attorney], but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter*, 510 F.3d at 618.  Given that this Court has consistently found rates within the $300 to $400 dollar range to be reasonable for highly experienced attorneys prosecuting FLSA actions in the local market, the Court finds that Sanford's request for a 17.5% mark-up to $470 is unreasonable.  Therefore, the Court will apply a $400 rate for Sanford's work in its lodestar calculation.  *See Reece v. Carey*, No. 3:16-CV-00069-GFVT, 2022 WL 701015, at *3 (E.D. Ky. Mar. 8, 2022); *Clark*, 2020 WL 2781601, at *6.

Next, the Court considers the requested $360 hourly rates for Vanessa Kinney ("Kinney") and Courtney Harness ("Harness") and $350 hourly rate for Steve Rauls ("Rauls").  Kinney has been practicing for fifteen years and "has served as both lead attorney and co-counsel on bench and jury trials in both federal and state courts."  (DN 63-3, at PageID # 492.)  Most of her billed hours included in Plaintiffs' lodestar calculation are for legal research and drafting pleadings and dispositive motions.  (DN 63-2, at PageID # 467–70.)  Rauls has been practicing for eleven years and "has litigated numerous FLSA cases through settlement or trial."  (DN 63-3, at PageID # 492.)  He also "provides guidance and management to a dozen attorneys across 500 or more cases."  (*Id.*)  He has worked on this case since 2017 and has appeared in Court on behalf of the Plaintiffs several

times.  (*See generally* DN 63-2.)  Thus, while it does not appear that Kinney and Rauls are partners of their law firm in a fiduciary sense, their respective practice experience and involvement in this case is sufficient to reasonably place the value of their services in mid-range of partner rates in FLSA suits in the local market.[4]  The same cannot be said of Harness who, despite impressive qualifications, has only one year of experience in civil practice, and most of her billing entries included in Plaintiffs' lodestar calculations are for client communications, document review, and supervised drafting.  (DN 63-3, at PageID # 492; DN 63-3, at PageID # 480–84.)  Accordingly, the rate for her work will be reduced to the local market rate for associate work, which, based on the Court's expertise and judgment as well as the reasonable rates found by courts in Kentucky, is $275 per hour.[5]  *See Clark*, 2020 WL 2781601, at *5–6 ($275 hourly associate rate awarded in FLSA and Kentucky labor-law class action); *Mitcham*, 2019 WL 5496023, at *4 (finding $285 hourly associate rate "consistent with market rates throughout Kentucky and Tennessee").  The Court further finds that the $220 hourly rate for Christopher Turansky's work is reasonable because it does not exceed the reasonable rate for associate work recognized by courts in Kentucky and is proportional to his limited practice experience.  (*See* DN 63-3, at PageID # 492.)

Finally, the Court considers the requested rates for law clerk, paralegal, and staff work. Although Sanford stated in his declaration that the requested rates are consistent "with hourly rates for paralegals, law clerks and staff charged by other firms in and around Arkansas," (DN 63-3, at PageID # 500), neither Plaintiffs nor Velox offer evidence probative of the prevailing market rate for these services in this venue.  The Court therefore relies on rates that courts in Kentucky have found reasonable, and consistent with those decisions, finds that the billed rates for law clerk,

---

[4] The slightly higher rate Kinney is reasonable in light of her practice experience exceeding Raul's by four years.
[5] In the Court's expertise and judgment, Harness could expect to command a rate on the higher for associates in light of her seventeen years of practice experience.

paralegal, and staff work on Plaintiffs' case are reasonable. *See Mitcham*, 2019 WL 5496023, at *4 (finding rate of "$150/hour for Professional Staff's time . . . consistent with market rates throughout Kentucky and Tennessee"); *Agee v. Bedrock Contracting, Inc.*, No. CV 5:14-438-DCR, 2016 WL 1175053, at *1 (E.D. Ky. Mar. 24, 2016) ($105 hourly rate for paralegal "d[id] not appear to be unreasonable"); *Clark*, 2020 WL 2781601, at *6 ("In this Court's own expertise and judgment . . . $125 per hour, is appropriate for staff work."); *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 1520432, at *4 (W.D. Ky. Apr. 25, 2017) (recognizing that it was higher than the average rate for paralegals in the local market, but nonetheless finding that "$190 is a reasonable hourly rate under these particular circumstances").

### 5. Reasonable Number of Hours Expended

Counsel's billing records claim a total of 222.55 hours worked, but "[a]fter exercising billing judgment to identify certain fees that should be deducted," they request payment for 89.55 hours. (DN 63-1, at PageID # 437.) Plaintiffs say that the deductions include "items for which billing was insufficiently clear to describe how the time was spent, for clerical or administrative work, for a portion of in-house conferences, and for a portion of time related to case management." (*Id.* at 442.) Plaintiffs also note that they deducted most entries for hours billed before the instant action was filed in February 2019, but that "some of this 'pre-litigation' work is billable because it benefitted Plaintiffs in the current case." (*Id.* at 446.) Plaintiffs cite *O'Brien v. Ed Donnelly Enterprises*, and assert that "the Sixth Circuit confirmed that work performed in a previously-dismissed case may recovered in a subsequent successful case if that work benefitted the plaintiffs on their successful claims." (*Id.*) (citing 575 F.3d 567, 577 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 666, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). Counsel has clearly indicated in its billing records which

entries have been deducted, so the Court need only determine whether the claimed entries reflect reasonable hours expended.

Velox does not dispute that a majority of the claimed hours were reasonably expended, but it does argue that the Court should deduct any hours billed before December 2018, which would preclude recovery for hours expended in the cases previously dismissed by this Court and by the district court in Arkansas. (DN 62, at PageID # 375–76; DN 64-1, at PageID # 510–12.) In support of its argument, Velox asserts that the FLSA "authorizes fees only for an 'action,' singular. It does not speak of 'actions,' plural, or 'litigation,' or use any other term giving this Court the power to award plaintiffs fees for work done in the Dismissed Action, but only, at most, this action." (DN 62, at PageID # 375.) With respect to Plaintiffs' reliance on *O'Brien*, Velox argues that the case "made clear that any such award for a prior action be based on a 'a specific showing of benefit' that the claimed work in the prior action had in the action then before the court." (DN 64-1, at PageID # 511.) Velox argues that Plaintiffs have not made any showing that counsel's work in the prior actions benefitted Plaintiffs in this case and that in fact, "[t]here is no reasonable basis to argue that the prior dismissed action advanced the ball here . . . ." (*Id.*)

*O'Brien* concerned whether opt-in plaintiffs that were dismissed from a FLSA action could recover attorney's fees incurred in pursuit of the collective action when they ultimately succeeded on individual claims filed separately after their dismissal from the collective action. *O'Brien*'s procedural history is more complicated than the one preceding this case, but the Northern District of Ohio has aptly summarized the relevant background and holding.

> The decision dealt with two Fair Labor Standards Act ("FLSA") cases, *O'Brien* and *Dellarussiani*. The plaintiffs were originally members of an opt-in FLSA class in *O'Brien*. After initially certifying the class and allowing discovery, the district court decertified the opt-in class and dismissed the plaintiffs' claims.

Thereafter, the plaintiffs filed separate complaints in *Dellarussiani,* which were ultimately resolved by way of an offer of judgment. When plaintiffs' counsel moved for fees, they requested fees for work expended in the *O'Brien* case. The district court declined to award fees for hours expended in a case other than *Dellarussiani,* reasoning that, because the plaintiffs had not prevailed in *O'Brien,* they were not entitled to fees for work expended in that case.

On appeal, the Sixth Circuit rejected "[s]uch a wooden reading" of the fee-shifting statute. *O'Brien, 575 F.3d at 576.* Rather, the pertinent analysis was whether the work expended in the *O'Brien* case benefitted the claims of the plaintiffs in *Dellarussiani,* the case in which they had prevailed:

["]The reality is that discovery concerning the *Dellarussiani* plaintiffs' claims took place in *O'Brien.* Expenses that plaintiffs' counsel incurred while trying to obtain collective-action certification in *O'Brien* should not be attributed to the prosecution of the *Dellarussiani* plaintiffs' particular claims *unless these expenses benefitted the Dellarussiani plaintiffs' individual claims.* For instance, fees for depositions in *O'Brien* that uncovered the facts surrounding the *Dellarussiani* plaintiffs' claims, even if the depositions were conducted as part of the *O'Brien* plaintiffs' effort to obtain collective-action certification, should not be rejected on the basis of [the fee-shifting statute] of the FLSA.["]

*Id.* (emphasis added).

*Nance v. Zwicker & Assocs., PC*, No. 1:13 CV 01604, 2015 WL 2195063, at *8–9 (N.D. Ohio May 11, 2015).

With that background, the undersigned turns to Velox's argument that Plaintiffs may not recover any fees incurred before December 2018. First, Velox criticizes Plaintiffs' reliance on *O'Brien*, in its words, "a single overruled (or abrogated) Sixth Circuit decision[,] as a basis for including fees for the prior dismissed action." (DN 64-1, at PageID # 510.) Elsewhere, Velox asserts that "there is no basis . . . in the overruled decision upon which plaintiffs rely for awarding attorney fees in this action for fees incurred in the prior dismissed action." (*Id.* at 511.) The Court is not persuaded by Velox's attempt to undermine the precedential value of *O'Brien*. The Supreme

Court's abrogation of *O'Brien* was completely unrelated to the issue of attorney's fees, and Velox acknowledges this in its brief.  (*Id.*) (properly citing *O'Brien* as "abrogated on other grounds" by *Campbell-Ewald Co.*, 577 U.S. at 136).  Despite the unrelated abrogation, *O'Brien* is a published opinion, and therefore—absent a contrary ruling by the Supreme Court or the Sixth Circuit sitting *en banc*—its holdings remain binding precedent within this circuit.[6]  *See* 6 Cir. R. 32.1.  Additionally, the Sixth Circuit has confirmed the relevant holding from *O'Brien* in decisions that have not been similarly affected by subsequent procedural history.  *Dellarussiani v. Ed Donnelly Enterprises, Inc.*, 468 F. App'x 479, 483 (6th Cir. 2012); *Smith*, 592 F. App'x at 370–71.  Therefore, consistent with *O'Brien* and the Supreme Court's guidance, the Court will evaluate the claimed hours expended during the prior actions and determine whether "the expenditure of counsel's time was reasonable in relation to the success achieved."  *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).

The disputed hours are relatively limited; Plaintiffs claim only 9.2 hours that were billed before counsel began work on the complaint in this action.  (DN 63-2, at PageID # 457, 461–62, 464, 466–67.)  In entries dated March 21 and March 22, 2018, Rauls billed .6 hours for "Telephone Conference(s) between Attorney and Client York; edit Declaration and send for signature" and .2 hours for "Work on Client's file email exchange with York regarding Declaration."  (*Id.* at 462.)  The only York declaration filed in this case is dated January 29, 2020.  (DN 29-7.)  The billing records show numerous entries for drafting, editing, and communications regarding York's declaration between December 13, 2019 and January 29, 2020.  (DN 63-2, at PageID # 473–75.)  This indicates that Plaintiffs did not benefit from the earlier work related to a declaration by York

---

[6] For example, in its memorandum opinion and order granting conditional collective action certification, the Court applied the standard set forth in *O'Brien* for determining whether members of a putative collective are similarly situated.  (DN 41, at PageID # 274–75, 276–77.)

in 2017.  In an October 11, 2018 entry, Rauls billed .1 hours for "Receipt and review of order denying as moot Arkansas Motion to Dismiss."  (*Id.* at 467.)  No other attorney billed for this, and at the time, not only had the case already been transferred to this Court, but Judge Simpson had already issued his order on Velox's motion to dismiss.  There is no reason to believe that Plaintiffs' ultimately benefitted from this work.  On July 30, 2018, around the time the case was transferred to this Court, Sanford billed .1 hours for "Preparation and drafting of intra-office memo: Pro Hac Vice process."  (*Id.* at 464.)  Plaintiffs argue that they benefitted from this work because it "would have been [done] in the current litigation had the current litigation been filed first."  (DN 63-1, at PageID # 448.)  However, in February 2019, around the time the instant case was filed, there are additional hours billed for drafting and editing *pro hac vice* applications.  (*Id.* at 469.)  The benefit from counsel's admission to practice in the instant case did not depend on any earlier discussion among counsel about *pro hac vice* admission.  In a February 14, 2018 entry, Rauls billed .2 hours for "Telephone Conference(s) with potential opt in/witness; discuss with Josh Sanford."  (*Id.* at 461.)  The entry does not identify the individual or what was discussed, and it is unclear whether this individual is among the individuals that opted to join the collective action in this case.  Without more information, the Court is unable to find any "specific showing of benefit to the [] plaintiffs" in the instant action.  *O'Brien*, 575 F.3d at 577.  In a November 13, 2018 entry, Sanford billed .1 hours for "Preparation and drafting of intra-office memo: new Plaintiff."  (DN 63-2, at PageID # 467.)  There is no evidence that this individual ever joined the instant action or showing of how this work supported Plaintiffs' claims in this case.  The Court will not include the forgoing hours in its lodestar calculation.

The remaining claimed pre-litigation hours were reasonably necessary to counsel's representation and benefitted Plaintiffs in pursuit of the success they realized in the instant action.

Early entries from June to August 2017 include 2.7 hours billed for document review and communications necessary to assess the case and prepare and confer with Plaintiffs about the potential litigation. (*Id.* at 457.) This standard due diligence is necessary to competent representation and Plaintiffs do not additionally claim similar introductory work at the time the case was transferred to this Court nor when the instant action was filed. Counsel also claim 2.2 hours billed for hours conferring about and drafting the initial complaint which was filed in the Arkansas district court and upon transfer to this Court. (*Id.*) The initial complaint raises the same claims and involve the same parties as the complaint filed in this case, and Plaintiffs say that the "Original Complaint utilized much of the same language as the prior case, meaning a portion of the work on the prior litigation's Complaint benefitted Plaintiffs in the current case." (DN 63-1, at PageID # 447.) Following Judge Simpson's order of dismissal for failure to state a claim, between October 9 and November 26, 2018, 3 hours were collectively billed by Stanford and Steve for work in reaction to the order, including document review and research for a potential amended complaint and strategy discussions. (DN 63-2, at PageID # 466–67.) Plaintiffs say that this work "guided the manner of pleading for the Original Complaint in the current case." (DN 63-1, at PageID # 447.) On November 26, 2018, Josh Sanford billed .1 hours for a telephone conference regarding "case status, calls with Clients." (DN 63-1, at PageID # 467.) This is the only reference to client communication between Judge Simpson's dismissal order and the start of work on the complaint filed in the instant action, which benefitted the Plaintiffs consistent with counsel's duty to keep clients reasonably informed of developments in the case. In light of the benefit to Plaintiffs and relationship with the results obtained in this action, the Court will include the foregoing hours in its lodestar calculation.

The claimed hours that were expended during the instant action are not disputed. Nevertheless, the Court has carefully reviewed the remaining entries on counsel's billing records. On February 13, 2020, Sanford billed .1 hours and Steve Rauls billed .2 for reviewing the Court's scheduling order that was issued the same day.  (DN 63-2, at PageID # 475.)  Additionally, .3 hours for reviewing the scheduling order and calendaring deadlines were billed by a staff member. (*Id.*)  Given that lead counsel reviewed the order and a staff member also reviewed it and recorded the deadlines, it appears that Rauls's review was a redundancy and the Court is unable to find that the .2 hours he billed were reasonably expended.  On February 28, 2020, Sanford billed .1 hours for "Work on Client's file: scheduling conference with M.J."  (*Id.* at 476.)  The scheduling conference had taken place nearly two months earlier, and it is unclear why it was necessary for the lead attorney on the case to perform this task.  Therefore, the Court is unable to find that this time was reasonably expended.  On September 23, 2020, Sanford and Rauls each billed .4 hours for their appearances at the Court's scheduling conference.  (*Id.* at 477.)  Sanford also billed .3 hours for "Preparation for Hearing" and .1 hours for "Conference with SR: court."  (*Id.*)  The Court is not questioning whether Sanford attended the conference, but unlike Rauls, he is not recorded as appearing on behalf of Plaintiffs during the conference, (*see* DN 30), nor is he among those that the Parties said to have participated in the Rule 26(f) planning meeting.  (*See* DN 21, at PageID # 115.)  Based on these facts, the Court is unable to find that the .7 hours Sanford billed for preparing and appearing at the scheduling conference was reasonably expended.  The Court will not include the forgoing hours in its lodestar calculation.  The Court further finds that all other claimed hours were reasonably expended and necessary to the representation of Plaintiffs in this case, and therefore, they will be included in the Court's lodestar calculation.

### 6.  Lodestar and the Johnsons Factors

Consistent with the analysis above, the Court's lodestar calculation is as follows.

| Name | Reasonable rate | Reasonable hours | Rate x Hours |
|------|------|------|------|
| Christopher Turansky | $220 | 4.4 | $968 |
| Courtney Harness | $275 | 10.9 | $2,997.50 |
| Josh Sanford | $400 | 15.3 | $6,120 |
| Steve Rauls | $350 | 31.8 | $11,130 |
| Vanessa Kinney | $360 | 11.8 | $4,248 |
| Law Clerk | $110 | 8.0 | $880 |
| Paralegal | $145 | 2.9 | $420.50 |
| Staff | $90 | 2.1 | $189 |
| **Total Lodestar** | | | **$26,953** |

There is "[a] strong presumption that the lodestar figure . . . represents a 'reasonable' fee . . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Although the Court may modify the lodestar amount under certain circumstances, "modifications to the lodestar are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation omitted).  In those cases, it may deviate up or down to achieve a reasonable result by considering the so-called *Johnson* factors.  *Geier*, 372 F.3d at 792.  These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir.1974)).

In their motion, Plaintiffs analyzed each of the *Johnson* factors and argue that none supports a deviation from the lodestar, other than the sixth factor.  (DN 63-1, at PageID # 449–54.)  Plaintiffs assert that by nature of the contingency fee agreement with the Plaintiffs, "counsel pursued the FLSA case without payment throughout the litigation."  (*Id.* at 451.)  Plaintiffs say that, while contingency arrangements ordinarily offer the possibility that counsel will recover more than the actual fees incurred, court approval of the fee amount under the FLSA limits them to their actual fees.  (*Id.*)  In other words, according to Plaintiffs, "counsel experience[d] the same delay as in a traditional contingency fee case but without the 'upside' of traditional contingency fee arrangements in terms of receiving far more in fees than is reflected in the actual billing."  (*Id.*)  Plaintiffs assert that "the Sixth Circuit has explicitly held that 'the reasonable hourly rate may be adjusted upward to account for the risk of non-payment inherent in a contingency fee arrangement.  But to use the arrangement as the basis for a downward adjustment from an otherwise reasonable rate is illogical and unjustified.' "  (*Id.* at 452) (quoting *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999)).  Based on the foregoing, Plaintiffs argue that "this factor does not support a downward deviation from the lodestar, and in fact supports an upward deviation."  (*Id.*)  In its analysis of the *Johnson* factors, Velox notes that "[t]he customary fee is the 40% contingency fee reflected in plaintiffs' contract, or less," but it does not explain why this justifies a downward departure from the lodestar amount here.  (DN 62, at PageID # 379.)  As was discussed in Part II.B.3 above, the lodestar method reflects a more appropriate calculation of reasonable fees in this case, and for the same reasons, penalizing counsel for their contingency arrangement with the lead

Plaintiffs would undermine the purpose of the FLSA's fee-shifting provision.  On the other hand, neither the risk to counsel of non-payment nor the potential for an outsized fee payment were realized in this case.  Therefore, the Court finds that this factor justifies neither an upward nor downward adjustment to the lodestar.

Velox offers several additional reasons for the Court to reduce the lodestar amount under *Johnson*.  With respect to the first factor, Velox asserts that the "case did not require extensive time and labor" because "[t]here was no discovery[,] [and] [t]he only significant motion practice was the motion for conditional certification of a collective action."  (DN 62, at PageID # 378.)  With respect to the second and third factors, Velox asserts that "[t]he case was not novel or difficult, but rather a relatively routine FLSA dispute requiring basic skills to litigate."  (*Id.*)  With respect to the seventh and tenth factors, Velox asserts that "[t]he case was neither especially desirable or undesirable, and any time limitations were largely, if not exclusively, a result of plaintiffs' failure to plead a valid cause for relief in the Dismissed Action, or to seek to amend the complaint in it."  (*Id.* at 379.)  Each of these considerations has already been factored into the Court's lodestar calculation and therefore none justify an adjustment to the lodestar amount.

With respect to the eighth factor, Velox argues that "Plaintiffs [] obtained very limited success in this action, and that is . . . the most crucial factor in determining a reasonable fee."  (*Id.*)  In support of this claim, Velox notes that Plaintiffs sought to certify a nationwide collective of members with claims dating back to February 2016, but the Court "conditionally certified a much more narrow collective consisting of" putative members that were employed by Velox as courier drivers in the Arkansas region since March 2018.  (*Id.*)  Velox noted that eight individuals opted to join the case, after which Plaintiffs made a settlement demand of around $28,000 plus fees and costs and that Velox ultimately settled for a lesser amount of $15,000.  (*Id.*)  As was discussed in

Part II.B.2 above, the Plaintiffs all recovered an amount exceeding their actual economic damages. While Plaintiffs may have cast a wide net in seeking collective action certification, this does not undermine the results achieved on behalf of the collective. *See Rembert*, 986 F.3d at 617 (finding that reduced fee was not justified when "[lead plaintiff] and several opt-in plaintiffs obtained 100% of the recovery due to them under the Act"); *Clark*, 2020 WL 2781601, at *15 (finding that a "$3000 judgment was a good result for [the plaintiff], as he likely could not have recovered more in damages—that is why he accepted the offer in the first place"). Therefore, the Court will not reduce the lodestar amount on this basis.

With respect to the twelfth factor, Velox asserts that district courts in the Sixth Circuit have consistently found a fee of 33% to be appropriate in cases similar to this one." (DN 62, at PageID # 379–80) (collecting cases). However, the cases Velox cites all address fees under the percentage-of-the-fund method. As the Court has discussed above, the percentage-of-the-fund method is not appropriate here, and "[i]n FLSA cases, courts often approve fee awards that are much larger than the clients' recovery." *Funk v. Airstream, Inc.*, No. 3:17-CV-260, 2019 WL 4599816, at *6 (S.D. Ohio Sept. 23, 2019) (collecting cases); *Fegley*, 19 F.3d at 1135 (upholding $40,000 in fees for $7,680 recovery); *Clark*, 2020 WL 2781601, at *15 (declining to adjust $11,881 lodestar that amounted to "roughly four times the recovery" of $3000). Given this, the Court will not reduce the lodestar amount based on the cases Velox cites.

In addition to the Parties' arguments, the Court has carefully considered the entire record and finds that it does not support a departure from the lodestar amount. Therefore, Plaintiffs will be awarded $26,953 in attorney's fees.

### 7.  Costs

As with attorney's fees, an award of costs is mandatory under the FLSA. 29 U.S.C. § 216(b).  Plaintiffs request an award of $489.05 for costs, which includes $400 for the court filing fee, $50.05 for postage, and $39 for copying costs.  (DN 63-4.)  Velox does not oppose the request. (DN 64-1, at PageID # 507.)  The Court finds that the request is reasonable and consistent with costs awarded in FLSA cases by courts in this circuit.  *Funk*, 2019 WL 4599816, at *7 (awarding costs for postage); *Clark*, 2020 WL 2781601, at *15 (awarding costs for filing fee and copying costs).  Therefore, Plaintiffs will be awarded $489.05 for costs.

### III.    ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1.  The Parties' Motion for Approval of FLSA Settlement (DN 59) is **GRANTED in part and DENIED in part**.

2.  On or before **March 30, 2022**, Plaintiffs shall file a supplemental statement representing whether the Opt-In Plaintiffs conferred settlement authority to the lead Plaintiffs or to counsel in advance of the settlement conference, were provided notice and an opportunity to object to the proposed settlement agreement, or otherwise assented or agree to the terms of the proposed settlement agreement.   The supplement statement shall not exceed two pages in length.

3.  The Parties' proposed settlement agreement is conditionally approved, pending final approval upon review of the supplemental statement.

4.  Velox's Motion for Leave to File a Supplemental Memorandum in Opposition (DN 64) is **GRANTED**.

5.  Plaintiffs' Motion for Costs and Attorneys' Fees (DN 63) is **GRANTED in part and DENIED in part**.  A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

March 25, 2022

cc:  Counsel of record

43